WERNER, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, .Appellant.

*December 19, 1899 — January 9, 1900.*

*Railroads: Personal injuries: Negligence: Invitation to dangerous situation: Common carriers: Evidence: Special verdict: Instruction to jury: Immaterial error: Expert testimony: Hypothetical questions: Remarks of counsel.*

1. Where a brakeman assisted plaintiff's little boy off one side of a car, and tendered his services to assist her off the same side. it must be regarded as an invitation to her to get off the car on that side and an assurance that it was reasonably safe for her to do so.

2. Where plaintiff was a woman fifty-three years of age, weighing 216 pounds, under the circumstances of the case as shown by the evidence, the defendant's brakeman was not in the exercise of ordinary care in inviting her to alight from the lowest step of the car upon frozen ground twenty-six inches below.

3. The defendant, as a common carrier of passengers, was bound to provide plaintiff on her reaching her destination with a safe place to alight, and, in view of her age and condition, to render her such reasonable assistance as to enable her, in the exercise of ordinary care, to alight from its train in safety.

4. It is not error to allow plaintiff to give the circumstances under which the accident occurred nor to testify that she was a widow.

5. It is not error to allow nonexpert witnesses, in the habit of associating with plaintiff, to testify,as to whether she appeared to suffer pain.

6. The trial court is not bound to submit questions for a special verdict in the form requested by either party, and where the questions submitted cover all the issuable facts the statute is satisfied and the rights of the parties are protected.

7. Submitting as a part of a special verdict a question as to whether the brakeman *negligently* pulled the plaintiff forward, and thereby caused her to lose her balance and fall to the ground, without any instruction in the charge as to what constitutes negligence, is not material error, where the questions of the special verdict cover the subject of proximate cause and indicate the standard of care for the negligence mentioned.

8. It was competent for the medical experts, in answering a hypothetical question, to testify whether the impairment of the sciatic nerve — a condition proved to be present in the right leg — might have

Werner vs. Chicago & Northwestern R. Co.

been produced by the accident and fall of plaintiff, where such question embraced all the facts which plaintiff's evidence tended to prove, and no facts which such evidence did not tend to prove, and assumed the truth of all statements therein contained.

9. Where questions submitted as part of a special verdict call for determination whether a person of ordinary intelligence, acting as the plaintiff did, ought to have foreseen, in the light of attending circumstances, that injury was likely to result from her conduct; whether she was in the exercise of such care for her own safety as the majority of mankind would have exercised under the circumstances; and whether there was negligence on her part which *naturally* and probably contributed, in any degree, to her injury — it is not error to refuse to instruct the jury, as requested, upon the subject of contributory negligence, that subject being covered by the questions submitted.

10. Where, if the defendant was guilty of negligence, it was only by virtue of the negligence of its employee, and so of an interested witness, remarks of plaintiff's counsel in effect that, when a man has a job depending upon the manner in which he gives his evidence, there is no tyranny like that of bread and butter, while of questionable propriety, do not constitute material error.

APPEAL from a judgment of the circuit court for Kenosha county: W. C. SILVERTHORN, Judge. *Affirmed.*

For the appellant there were briefs by *Fish, Cary, Upham & Black,* attorneys, and *Edward M. Hyzer,* of counsel, and oral argument by *Mr. Hyzer.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* and oral argument by *George Lines.*

CASSODAY, C. J. This action was commenced November 29, 1895, for damages for personal injuries sustained by the plaintiff while alighting from the defendant's train at Kenosha, December 31, 1894. Issue being joined and trial had, the jury returned a special verdict to the effect (1) that the brakeman Marshall was standing on the east side of the car when the plaintiff came out of the car; (2) that while the plaintiff was standing on the last step of the car he extended his hand to the plaintiff for the purpose of assisting her in

alighting; (3) that the plaintiff took hold of his hand while
she was standing upon the last step of the car; (4) that he
negligently pulled her forward, and thereby caused her to
lose her balance and fall upon the ground; (5) that a man
of ordinary intelligence and prudence, experienced in the
branch of railway service in which brakeman Marshall was
engaged, and acting as he did after he took hold of the
plaintiff, ought to have foreseen, in the light of the attend-
ing circumstances, that he was acting in a manner which
would be likely to cause a personal injury to the plaintiff;
(6) that the injury which the plaintiff received at the time
and place in question was the natural and probable result of
negligence on the part of the defendant by its brakeman
Marshall, after he took hold of her, produced immediately
by such negligence, or by such negligence setting other
causes in motion, each in order being started naturally by
the one preceding it, and altogether constituting a complete
chain or succession of events, so united by a close causal con-
nection as to form a natural whole, reaching from such neg-
ligence to the injury and producing it; (7) that a person of
ordinary intelligence and prudence, acting and proceeding
as the plaintiff did at the time in question, ought not to have
foreseen, in the light of the attending circumstances, that
he or she was acting in a manner which would be likely to
result in some injury to his or her person; (8) that the plaint-
iff, at the time in question, did exercise such care for her
own safety as the majority of mankind would have exercised
under the circumstances of the situation; (9) that there was
no negligence on the part of the plaintiff at the time in ques-
tion which naturally and probably contributed in any degree
to the injury which she received, either immediately or by
setting other causes in motion, each in order being started
naturally by the one preceding it, and altogether constitut-
ing a complete chain or succession of events, so united by
close causal connection as to form a natural whole, reaching

from such negligence to the injury and contributing to it; (10) that they assess her damages at $3,000. From the judgment entered upon such verdict in favor of the plaintiff for the amount stated, with costs, the defendant brings this appeal.

It is undisputed that the accident happened after the defendant had constructed its double tracks from Chicago to points north of Kenosha; that at Kenosha there was a depot and platform on the east side of the east track, and a platform on the west side of the west track; that there was no platform between the two tracks, the space being only about four feet; that the plaintiff, at the time, was fifty-three years of age, and had a family, and had lived in Kenosha about four months, having moved there from Illinois; that December 31, 1894, she, being in Chicago, took passage on the defendant's train, in an ordinary passenger coach, for her home, reaching Kenosha about one o'clock in the afternoon of that day, the train going as usual in that direction — upon the west track; that the lowest step leading from the car in which the plaintiff rode to the platform on the west side of the west track was twenty-four inches above that platform; that the lowest step leading from that car to the ground on the east side of the west track was twenty-six inches above the ground.

The plaintiff testified to the effect that when the train reached Kenosha it was crowded with passengers; that she was about the last one to go out of the car; that she followed those in front of her north, towards the front end of the car; that those ahead of her got off on the east side of the car — towards the depot; that she was close up to the people passing out in front of her; that her little boy, about ten years old at the time, was with her, and that he went out just ahead of her; that she had no bundles, but did have a little shopping bag or satchel, in which she carried her money, in her left hand, and got it onto her left arm before the acci-

dent; that she did not look to the west side of the car, but followed the people ahead of her out onto the platform, and down the steps, on the east side of the car, to the lowest one; that when she got there she saw the brakeman — he had a uniform on; that she went slowly down the steps — took her time; that the brakeman took hold of her left hand, and gave her a little pull, and she lost her balance; that, at the same time she lifted her foot to step down on the ground, he gave her a little pull, and she lost her balance, and fell on the frozen ground, and was badly injured; that where she fell there was no platform, nor bench, nor box; that she weighed 216 pounds at the time; that she did not hear the brakeman tell her to get off on the west side — that she heard nothing about her getting off on the west side; that the brakeman said nothing to her before the accident, but simply took hold of her hand, as stated. Her version of the transaction was corroborated by her little boy, who was with her at the time of the accident.

The brakeman testified to the effect that when the train got to Kenosha, he got off on the west side of the train; that several gentlemen came out of the smoker, and got off on that side; that one or two came out of the coach in which the plaintiff was riding, and got off on that side; that, when the plaintiff and her little boy came to the front, he observed that she was not looking toward him, and he said, " Step off on this side, please," but that she made no answer, and did not look at him; that he then went over the platform of the smoker, and got down on the east side, and helped the boy off, and then took a shawlstrap, or a bundle done up in a shawlstrap, out of the plaintiff's left hand, and put it in his right hand, and turned around to lay it down, and while doing so the plaintiff started to alight, and that he did not get hold of her until she was getting off the step, and that after she got upon the ground her legs gave way from under her, and she fell; that he

caught her on the fly, as she was coming down from the step; that when he took her shawlstrap he requested her to just wait a minute, until he laid down her bundle, and he would then help her, but that when he laid down the bundle, and turned around, she was in the act of alighting.

Thus, it appears that the evidence as to the manner of the accident is conflicting. According to the plaintiff's version, she had no bundle nor shawlstrap, and the brakeman took none from her. They agree, however, in one thing, and that is that the brakeman assisted the little boy off the east side of the car, and tendered his services to assist her off the east side of the car. That must be regarded as an invita-. tion for her to get off on that side of the car. If it was not reasonably safe for her to get off on that side of the car, then he should have insisted upon her getting off on the west side of the car, instead of so inviting her to get off on the east side of the car. There is no evidence that, after he got upon the east side of the car, he made any protest or objection to her getting off on that side of the car, or that he, while there, requested her to get off on the other side of the car. For the purposes of this appeal, we must assume that the plaintiff's version of the transaction was correct. The question recurs whether the brakeman was in the exercise of ordinary care in inviting the plaintiff to alight from the lowest step on the east side of the car, upon the frozen ground, twenty-six inches below, under the circumstances detailed by her.

The defendant, as a common carrier of passengers, was certainly bound to provide a safe place for the plaintiff to alight on reaching her destination, and, in view of her age and condition, to render such reasonable assistance as to enable her, if in the exercise of ordinary care on her part, to alight from the train in safety. *McDermott v. C. & N. W. R. Co.* 82 Wis. 251. In that case, the floor was on a level with the track; and it is stated in one place that the steps

led from the platform of the car down to within about
twenty-two inches of the floor, and in another place that it
was proved that the distance from the lowest step of the
car to the floor was twenty-six or twenty-seven inches; that,
to enable passengers to alight from cars, it was customary
to place a movable bench at the foot of the steps. The jury
in that case found that such bench was not a reasonably
safe appliance, in the absence of a brakeman to assist pas-
sengers to alight, and that the defendant's negligence con-
sisted in the bench not being placed in a reasonably safe
position, and the brakeman leaving such place of duty before
the plaintiff alighted. There was a verdict for the plaintiff
in that case, but the judgment was reversed because the
court took from the jury the question of contributory negli-
gence, notwithstanding the plaintiff voluntarily and unnec-
essarily left the car without waiting for assistance or having
the bench placed in its proper position. In the case at bar
we must hold that the evidence on the part of the plaintiff
is sufficient to support the findings of the defendant's negli-
gence, and that the plaintiff was free from contributory
negligence, and hence that there was no error in refusing
to direct a verdict in favor of the defendant.

We perceive no error in allowing the plaintiff to testify
that, in going out of the car, the people ahead of her got off
on the east side of the car; nor in allowing her to testify
that she was a widow; nor in allowing her to testify that
her little boy, ten years old, came out of the car with her,
and that her two other boys were near when she alighted
from the car. It was certainly proper to give the circum-
stances under which the accident occurred. In this the
case is distinguished from *Kreuziger v. C. & N. W. R. Co.*
73 Wis. 162. The fact that she was a widow tended to show
that whatever time was lost by disability was her own. Nor
was it error to allow nonexpert witnesses, in the habit of
associating with the plaintiff, to testify as to whether she
appeared to be suffering pain. *Keller v. Gilman*, 93 Wis. 9.

Among the errors assigned is one that a witness was allowed to testify that the main portion of the city of Kenosha was on the east side of defendant's tracks. That certainly requires no consideration. As held by the supreme court of the United States: "When the assignments of error are very numerous, it is practically found necessary to consider but a few of them." *Grayson v. Lynch*, 163 U. S. 468. The oral argument, and the brief of the counsel who made it, are not subject to such criticism.

Error is assigned for refusing to submit to the jury, as a part of the special verdict, certain questions requested. The form of such verdict in all such cases is very much in the discretion of the trial court. *Heddles v. C. & N. W. R. Co.* 74 Wis. 258; *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 362. The questions submitted in the case at bar seem to cover all the issuable facts. This being so, the statute was satisfied, and the rights of the parties protected. The court was not bound to submit questions in the form requested by either party.

Error is assigned in the submission of the fourth question of the special verdict, as to whether the brakeman "negligently" pulled the plaintiff forward, and thereby caused her to lose her balance, and fall upon the ground. The particular criticism is that the word "negligently" was not written in the question until the close of the charge, and that the court then failed to charge the jury as to what constituted such negligence, and also refused to submit to the jury the question whether the brakeman exercised such care as a man of ordinary intelligence and prudence, experienced in the branch of railway service in which he was engaged, would have exercised under the circumstances. The point made is that the court was bound either to submit that question or charge the jury on the subject, and that the court should have charged the jury, as requested, to the effect that, if they found that the plaintiff lost her balance

by reason of such pulling on her hand as was ordinarily
used by brakemen in the ordinary manner of assisting pas-
sengers to alight, then they must answer the fourth question
"No." But we are constrained to hold that the fifth and
sixth questions submitted substantially covered the subject,
and enabled the jury to intelligently answer the fourth
question. The substance of such questions is contained in
the foregoing statement, and need not be here repeated.
The fifth question called upon the jury to determine whether
a man of ordinary intelligence and prudence, experienced
in the branch of railway service in which the brakeman
was engaged, and acting as he did after he took hold of
the plaintiff, ought "to have *foreseen*, in the light of the
attending circumstances, that he was acting in a manner
which would be likely to cause a personal injury to the
plaintiff;" and the sixth question called upon the jury to
determine whether the plaintiff's injury was "the natural
and probable result of negligence on the part of the defend-
ant by its brakeman Marshall, after he took hold of her."
These questions seem to cover the subject of proximate
cause, and to indicate the standard of care for the negli-
gence mentioned in the fourth question submitted. *Deisen-
rieter v. Kraus-Merkel M. Co.* 97 Wis. 287; *Crouse v. C. &
N. W. R. Co.* 102 Wis. 197.

Error is assigned because the medical experts, in answer
to a hypothetical question, were allowed to testify whether
the impairment of the sciatic nerve, which was proved to
be present on the right leg, might have been produced by
the accident and fall. Such questions embraced all the facts
which the plaintiff's evidence tended to prove, and embraced
no fact which such evidence did not tend to prove; and it
assumed the truth of all statements therein contained. Under
such circumstances, it seems to be settled that such evidence
was competent. *Quinn v. Higgins,* 63 Wis. 664; *Smalley v.
Appleton,* 75 Wis. 18; *Zoldoske v. State,* 82 Wis. 606, 607;

*Tebo v. Augusta,* 90 Wis. 405; *Kliegel v. Aitken,* 94 Wis. 432; *McKeon v. C., M. & St. P. R. Co.* 94 Wis. 477; *Selleck v. Janesville,* 100 Wis. 162, 163.

Error is assigned because the court refused to instruct the jury, as requested, upon the subject of contributory negligence. That subject is covered by the seventh, eighth, and ninth questions submitted, the substance of which appears in the statement, and need not be repeated. One of such requests was to the effect that, in answering the eighth question, they must regard the testimony of the plaintiff and her son, that they did not hear the brakeman request them to alight on the west side of the car, as negative testimony, and not of sufficient weight to overcome the testimony of the brakeman that he did make such request. Such instruction was of no special consequence, since it is, in effect, conceded that the brakeman subsequently invited the plaintiff to alight on the east side of the car, as already indicated; and, besides, the rule as to positive and negative testimony was given in the general charge. For the same reason, it was of no consequence to instruct the jury that, in answering the seventh, eighth, and ninth questions, they must remember that it was the duty of the plaintiff to look for a platform upon which to alight, etc. Undoubtedly, the plaintiff was bound to exercise ordinary care in alighting from the car, but the court was not bound to instruct the jury that it was her duty to take hold of the handrail of the car with her right hand while going down the steps of the car, and to retain such hold while descending from the last step to the ground. The three questions thus submitted called for a determination whether a person of ordinary intelligence, acting as the plaintiff did, ought to have foreseen, in the light of the attending circumstances, that injury was likely to result from her conduct, and whether she was in the exercise of such care for her own safety as the majority of mankind would have exercised under the circum-

stances, and whether there was negligence on her part which naturally and probably contributed, in any degree, to her injury. We find no reversible error in any of these questions or the charge of the court thereon.

There are numerous exceptions to the remarks of counsel for the plaintiff in his closing argument to the jury. In speaking of the testimony of the brakeman, he said: "But I want to tell you there is no tyranny like that of bread and butter." And again: "When a man . . . has his job depending upon the manner in which he gives his evidence." And again: "That brakeman testified, in your hearing, that he had a good job, and he wanted to keep it. I say it is a circumstance that you have a right to consider. It is a great temptation that is naturally afforded by hanging a man's job in suspense." The propriety of such remarks may be very questionable. But we are to remember that, if the defendant was guilty of negligence, it was only by virtue of the brakeman's negligence. A finding against the defendant, therefore, would, necessarily, be a finding against the brakeman, and might very properly lead to his discharge. He was therefore an interested witness, and the jury might properly consider the fact. The same was true in respect to the plaintiff. She was seeking damages, and her right to recover depended very largely upon her own testimony. The tyranny of "bread and butter," if there is any such tyranny, was applicable to her as well as to the brakeman, and the jury had the same right to consider it.

Other exceptions were taken, but they are not such as to call for special consideration.

*By the Court.*— The judgment of the circuit court is affirmed.