**Sadie Pearl VAUGHN, Appellant,**

v.

**NORTHWEST AIRLINES,
INC., Respondent.**

No. C7–95–2459.

Court of Appeals of Minnesota.

April 16, 1996.

Review Granted June 11, 1996.

Michael C. Hager, Larry Leventhal & Associates, Minneapolis, for Appellant.

Donald C. Mark, Jr., Brian R. Sattler, Richard L. Pemberton, Jr., Meagher & Geer, P.L.L.P., Minneapolis, for Respondent.

Considered and decided by DAVIES, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

PARKER, Judge.

Appellant Sadie Vaughn argues that the district court erred by: (1) borrowing a one-year state statute of limitations and applying it to her federal claims under the Air Carrier Access Act, 49 U.S.C.A. § 41705, and the Rehabilitation Act, 29 U.S.C. § 794; (2) granting summary judgment to respondent Northwest Airlines on the Rehabilitation Act claim due to her failure to present sufficient evidence of a federally funded program; and (3) dismissing her negligence claim on the ground that it was identical to a Minnesota Human Rights Act claim that was barred by the Act's one-year statute of limitations. We affirm in part, reverse in part, and remand.

## FACTS

In October 1992, appellant Sadie Vaughn allegedly sustained a permanent and debilitating injury to her left shoulder while boarding a Northwest Airlines (NWA) flight. Vaughn claims that she was at that time "disabled" under both the Air Carrier Access Act, 49 U.S.C.A. § 41705 (ACAA), and the Rehabilitation Act, 29 U.S.C. § 794.

Vaughn alleges that on the day of her injury she arrived at the airport and presented five items of luggage to an agent at NWA's baggage check-in counter. She claims that the NWA agent erroneously informed her that she could check only two items without paying a significant penalty and that she disagreed with the agent, informed her that she was disabled, and asked if she could speak to someone else. The agent declined further assistance, and because Vaughn could not produce the penalty fee, she was required to carry one of her heavy pieces of luggage in addition to her two lighter pieces of carry-on luggage.

Vaughn arrived at her gate by motorized transport. She requested assistance from three NWA employees who were servicing her flight, but she was unable to obtain any help in carrying her bags onto the plane. She claims that she was declined assistance by the motorized cart operator, the agent at the gate, and the flight attendant at the front of the cabin.

By lifting, carrying, and stowing her own luggage, Vaughn has allegedly incurred a permanent left shoulder injury, diagnosed by her physician as a frozen shoulder. Her injury has caused her extreme pain and has required extensive medical treatment. She is unable to perform many daily routine tasks and has had to obtain assistance from others. In addition, Vaughn claims that due to her injury, she has been unable to work, and it appears that she may never be able to work again.

**46**

## ISSUES

**I.** Did the district court apply the correct statute of limitations in finding that Vaughn's federal claims were time-barred?

**II.** Did Vaughn provide sufficient evidence on the issue of federal funding to avoid summary judgment on her Rehabilitation Act claim?

**III.** Is Vaughn's common law negligence claim preempted by the Minnesota Human Rights Act and thus barred by the Act's one-year statute of limitations?

## DISCUSSION

### I.

Vaughn commenced her suit against NWA two years from the date of her injury. She brought claims under both the Air Carrier Access Act, 49 U.S.C.A. § 41705 (West Supp. 1995), and the Rehabilitation Act, 29 U.S.C. § 794 (1988), in addition to a common law negligence claim. Neither federal statute, however, provides a limitations period for such claims. The district court dismissed both of her federal claims, primarily on the ground that they were untimely under a one-year statute of limitations, which the district court borrowed from the Minnesota Human Rights Act. Vaughn argues that the district court erred by applying the one-year statute of limitations from the Minnesota Human Rights Act, Minn.Stat. § 363.06, subd. 3 (1992), instead of Minnesota's six-year statute of limitations for personal injury actions, Minn. Stat. § 541.05, subd. 1(5) (1992), which she argues is the applicable statute of limitations under current federal case law.

A reviewing court is not bound by and need not give deference to a trial court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Accordingly, this court reviews the present statute of limitations question de novo.

When state statutes of limitations are borrowed and applied to federal claims, "the problem of characterization 'is ultimately a question of federal law.'" *Wilson v. Garcia*, 471 U.S. 261, 269–70, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985) (quoting *Auto Workers v.*

*Hoosier Cardinal Corp.*, 383 U.S. 696, 706, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966)).

> Only the length of the limitations period, and closely related questions of tolling and application are to be governed by state law.

> * * *

> Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action.

*Wilson*, 471 U.S. at 269, 105 S.Ct. at 1943.

In this case, the principal authorities relied on by the district court were *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), and *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). *Tomanio* involved an action brought under 42 U.S.C. § 1983, a federal statute that has no accompanying statute of limitations. *Tomanio*, 446 U.S. at 483, 100 S.Ct. at 1794. In that case, the United States Supreme Court noted that "[w]hen such a void occurs, this Court has repeatedly 'borrowed' the state law of limitations governing an analogous cause of action." *Id.* at 483–84, 100 S.Ct. at 1795. The Court noted:

> In 42 U.S.C. § 1988, Congress "quite clearly instructs [federal courts] to refer to state statutes" when federal law provides no rule of decision for actions brought under § 1983.

*Id.* (quoting *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978)) (alteration in original).

The *Tomanio* Court also re-affirmed

> the general principle that [when] there [is] no specifically stated or otherwise relevant federal statute of limitations for the federal substantive claim created by Congress * * *, "the controlling period * * * ordinarily [is] the most appropriate one provided by state law."

*Id.* (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975)). The *Tomanio* court ultimately held that the district court was obligated to apply not only

the analogous state statute of limitations, but also the state rule for tolling that statute of limitations. *Id.* at 491–92, 100 S.Ct. at 1798–99.

In *Wilson v. Garcia*, the Supreme Court held that claims brought under 42 U.S.C. § 1983 were most appropriately characterized as personal injury claims, and thus New Mexico's three-year statute of limitations for personal injury claims was applicable to such actions. 471 U.S. at 280, 105 S.Ct. at 1949. Recognizing the broad range of actions that can be brought under section 1983, ranging from desegregation to allegations of police brutality, Justice O'Connor severely criticized the majority, who she believed "perceived a need for uniformity and has simply seized the opportunity to legislate it" by holding that one state statute in each state shall control all section 1983 claims. *Id.* at 284, 105 S.Ct. at 1951 (O'Connor, J., dissenting). She noted the history of federal courts of appeal and state court decisions that "have continued the settled practice of seeking appropriate *factual* analogies for each genus of § 1983 claim." *Id.* at 282, 105 S.Ct. at 1950 (citations omitted) (emphasis added). Despite this history of precedent, she wrote,

the Court suddenly discovers that § 1988 "is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims."

*Id.* at 284, 105 S.Ct. at 1951 (quoting the majority 471 U.S. at 275, 105 S.Ct. at 1947). Justice O'Connor concluded her dissent by writing:

I would reverse the Court of Appeals' scholarly but ultimately flawed attempt to impose a single state limitations period for all § 1983 claims. Because I would apply the statute of limitations New Mexico applies to state claims *directly analogous to the operative facts of this case,* I respectfully dissent.

*Id.* at 287, 105 S.Ct. at 1953 (emphasis added).

In the present case, the court took a common sense approach to "borrowing" and applied the limitations period that Minnesota applies to claims *directly analogous to the operative facts* of this case. The district court borrowed the one-year statute of limi-

tations from the Minnesota Human Rights Act primarily because Vaughn's claims, when viewed under Minnesota law, are more directly analogous to discrimination claims under the Minnesota Human Rights Act than they are to personal injury claims in general. As the district court pointed out, Vaughn relies on the following subsection from the Air Carrier Access Act (ACAA):

In providing air transportation, an air carrier may not discriminate against an otherwise qualified individual on the following grounds:

(1) the individual has a physical or mental impairment that substantially limits one or more major life activities.

(2) the individual has a record of such an impairment.

(3) the individual is regarded as having such an impairment.

49 U.S.C.A. § 41705. Vaughn's Rehabilitation Act claim is based on a similar provision, which reads in pertinent part:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any executive agency or by the United States Postal Service.

29 U.S.C. § 794.

In Minnesota, disability discrimination claims are brought under the Minnesota Human Rights Act (MHRA):

It is an unfair discriminatory practice to deny any person the full and equal amount of the goods, services, facilities * * * because of a disability.

Minn.Stat. § 363.03, subd. 3 (1992). Recognizing the nearly identical characteristics of the above statutes, the district judge applied the statute of limitations from the MHRA, the period for claims most factually analogous to Vaughn's federal claims.

Vaughn argues, however, that under the United States Supreme Court's decision in

*Wilson* and under other current federal case-law, Minnesota's six-year limitations period for general personal injury claims should apply, instead of the MHRA's one-year limitations period. In *Wilson,* the Supreme Court held that New Mexico's limitations period for personal injury claims would, for practical reasons, apply uniformly to all section 1983 claims:

> If the choice of the statute of limitations were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitations should apply to each § 1983 claim.

*Wilson,* 471 U.S. at 274, 105 S.Ct. at 1945–46. The court further expanded the *Wilson* rule in *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), when it held that in states with multiple statutes of limitations for personal injury actions, rather than applying the limitations period for the state tort claim that is most analogous, "courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Id.* at 250, 109 S.Ct. at 582.

The *Owens* Court noted that *Wilson* "expressly rejected the practice of drawing narrow analogies between § 1983 claims and state causes of action." *Id.* at 248, 109 S.Ct. at 581 (citing *Wilson,* 471 U.S. at 272, 105 S.Ct. at 1945). In *Wilson,* the Court reasoned that any analogies between section 1983 claims and state causes of action are bound to be imperfect. *Wilson,* 471 U.S. at 272, 105 S.Ct. at 1945. The Court stated, "[t]he high purpose of [section 1983] makes it appropriate to accord the statute 'a sweep as broad as its language.'" *Id.* at 272, 105 S.Ct. at 1945 (quoting *United States v. Price,* 383 U.S. 787, 801, 86 S.Ct. 1152, 1160, 16 L.Ed.2d 267 (1966)).

■ *Wilson* dictates that, for the sake of uniformity and predictability, a discrimination claim under 42 U.S.C. § 1983 will be controlled by Minnesota's residual six-year personal injury statute of limitations and not the statute of limitations contained in the Minnesota Human Rights Act. *See Berg v. Groschen,* 437 N.W.2d 75, 77 (Minn.App. 1989) ("Under the Supreme Court's directive, we designate the six-year limitations period in Minn.Stat. § 541.05, subd. 1(5), as the applicable statutory limitations period for section 1983 claims.").

The district court distinguished the present case from cases involving section 1983 claims:

> Unlike the relatively specific ACAA disability discrimination provisions, 42 U.S.C. § 1983 * * * is cast broadly, granting rights to citizens to sue any person who acts "under color of State law" and denies the plaintiff any of the rights, privileges or immunities which are secured by the U.S. Constitution.

The district court held that Vaughn's reliance on *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), was similarly misplaced because *Goodman,* which addressed claims brought under 42 U.S.C. § 1981, also involved a federal statute that applied broadly to a variety of claims. But section 1981, unlike section 1983, is specifically designed to address racial discrimination,[1] and yet the United States Supreme Court still found that a state's two-year limitations period for personal injury actions is applicable to section 1981 claims. Rejecting the argument that Pennsylvania's statute of limitations for interference with contractual rights was the applicable statute, the Supreme Court stated:

> Section 1981 has a much broader focus than contractual rights. The section speaks not only of personal rights to contract, but personal rights to sue, to testify, and to equal rights under all laws for the security of persons and property; and all persons are to be subject to like punishments, taxes, and burdens of every kind.

1. Section 1981 provides:
   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and pro-

ceedings for the security of persons and property as is enjoyed by *white* citizens, and shall be subject to like punishments, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
42 U.S.C. § 1981(a) (emphasis supplied).

* * * Insofar as it deals with contracts, it declares the personal right to make and enforce contracts, a right, as the section has been construed, that may not be interfered with on racial grounds.

*Id.* at 661, 107 S.Ct. at 2621. Thus, although section 1981 covers a broad range of claims, insofar as they all pertain to causes of action based on discrimination, it is no less analogous to claims brought under the MHRA than are the federal provisions at issue in this case.

■ Federal courts have consistently characterized discrimination claims under federal statutes as similar to section 1983 claims and have accordingly applied the same statute of limitations to such claims, even where the federal legislation at issue specifically addressed discrimination. *See, e.g., Southerland v. Hardaway Management Inc.,* 41 F.3d 250 (6th Cir.1994) (rejecting plaintiff's argument that Kentucky Equal Opportunities Act is most closely analogous in purpose to Rehabilitation Act and holding instead that Kentucky's one-year statute of limitations for personal injury actions is the applicable limitations period for Rehabilitation Act claim); *Baker v. Board of Regents of State of Kansas,* 991 F.2d 628, 632 (10th Cir.1993) (disability discrimination claims under section 504 of Rehabilitation Act "best characterized as claims for personal injuries" and thus Kansas's two-year limitations period for personal injuries applies); *Bush v. Commonwealth Edison Co.,* 990 F.2d 928, 933 (7th Cir.1993) (Illinois's two-year statute of limitations for personal injury claims applies to a disability discrimination claim under section 504 of Rehabilitation Act); *Hickey v. Irving Indep. Sch. Dist.,* 976 F.2d 980, 983 (5th Cir.1992) (Texas's limitations period for personal injury claims applies to Rehabilitation Act claims); *Morse v. University of Vermont,* 973 F.2d 122, 127 (2d Cir.1992) (Vermont's three-year limitations period for personal injury claims applies to claims under section 504 of the Rehabilitation Act); *Hall v. Knott County Bd. of Educ.,* 941 F.2d 402, 409–10 (6th Cir.1991) (Kentucky's one-year limitations period for personal injury claims applies to plaintiff's Rehabilitation Act claim); *Raggi v. Wegmans Food Markets, Inc.,* 779 F.Supp. 705 (W.D.N.Y.1991) (New York's three-year limitations period for personal injury claims applies to disability discrimination claims under section 504 of the Rehabilitation Act).

Respondent NWA dismisses nearly all of the aforementioned authority on the ground that those courts did not have available to them a statute of limitations that is analogous to the one in the MHRA.[2] NWA maintains that if those courts considering claims under the Rehabilitation Act had been able to borrow a similar statute, they would have done so. Our research on this point reveals that at least the Fourth Circuit would probably agree with NWA. *See Wolsky v. Medical College of Hampton Roads,* 1 F.3d 222 (4th Cir.1993) (Virginia's Rights of Persons with Disabilities Act, which was modeled after the federal Rehabilitation Act, provides appropriate statute of limitations for Rehabilitation Act claims, rather than Virginia's two-year limitations period for personal injury claims). In *Wolsky,* the Fourth Circuit distinguished three cases in which courts had applied personal injury periods of limitation to discrimination claims brought under federal statutes: *Hickey,* 976 F.2d at 983 (applying limitations period for personal injury claims to Rehabilitation Act claim); *Morse,* 973 F.2d at 127 (same); and *Hall,* 941 F.2d at 409–10 (same). The Fourth Circuit asserted that at the time of those decisions, the states involved did not have state statutes of limitations for disability discrimination claims.

Since *Wolsky,* however, the Sixth Circuit has also addressed this issue, but with a different conclusion. *See Southerland,* 41 F.3d at 250. In *Southerland,* the Sixth Circuit, considering a claim under the Rehabilitation Act, could have chosen to apply a state limitations period designed for disability discrimination claims. The Sixth Circuit rejected that approach, however, and instead applied the limitations period for personal injury claims in Kentucky. *Id.*

**2.** In light of the basis for our decision, we find it unnecessary to explore the validity of this assertion.

Even if we were to accept NWA's argument distinguishing this case from prior cases involving federal claims of discrimination, we conclude that we are bound by a recent Eighth Circuit opinion addressing discrimination claims under Title VI and Title IX. *See Egerdahl v. Hibbing Community College,* 72 F.3d 615 (8th Cir.1995). In *Egerdahl,* the Eighth Circuit rejected the district court's decision that the limitations period of the MHRA should be applied to discrimination claims under Title VI [3] and Title IX.[4] *Id.* at 618. The Eighth Circuit stated that the district court's decision failed to take into account the federal interest in uniformity and certainty. *Id.*

The Eighth Circuit concluded that

> [b]ecause the [United] States Supreme Court has characterized both § 1983 and § 1981 claims as personal-injury statutes, * * * Title VI claims should also be governed by the limitations period in Minnesota's personal-injury statute.

*Id.* (citations omitted). "As for Title IX," the Eighth Circuit continued, "it is also analogous to § 1983—both statutes prohibit gender discrimination by state-run schools that receive federal funds." *Id.* The court concluded, therefore, that the same limitations period that applies to section 1983 and Title VI should also apply to Title IX. *Id.* Accordingly, the court held that Minn.Stat. § 541.05, subd. 1(5), a six-year residual personal injury limitations statute, applies to Title VI and Title IX claims. *Id.* Due to the similarities between the federal statutes at issue in *Egerdahl* and the federal statutes relied upon by Vaughn, we conclude that the Eighth Circuit's holding is binding precedent in the present case.

Prior to *Egerdahl,* the Supreme Court of Georgia faced the same question and came to the same conclusion with respect to the Rehabilitation Act. *See Henrickson v. Sammons,* 263 Ga. 331, 334, 434 S.E.2d 51, 53

(1993). In *Henrickson,* the Supreme Court of Georgia stated:

> [T]he federal courts have characterized the claims afforded by 29 U.S.C. § 794 * * * and, under the holding of *Wilson v. Garcia,* we are bound to follow that characterization. While the U.S. Supreme Court has not addressed the issue, an overwhelming majority of federal courts have characterized 29 U.S.C. § 794 as providing a cause of action for injuries to the person and have, therefore, concluded that a state statute of limitations for personal injury actions is the most analogous to claims brought under 29 U.S.C. § 794.

*Id.* Instead of applying Georgia's more factually analogous limitations period for employment discrimination claims, the court felt bound to apply Georgia's limitations period for personal injury claims:

> [W]hile the Court of Appeals correctly characterized petitioner's specific claim as one of employment discrimination to which OCGA § 34–6A–6(a) would apply, we are bound by the federal characterization of claims brought under 29 U.S.C. § 794 as "injuries to the person." * * * Therefore, we hold that the most analogous statute of limitation is that for personal injury, OCGA § 9–3–33. We recognize, however, as the Georgia Court of Appeals pointed out, that this decision reaches a disharmonious result with regard to intrastate uniformity of statutes of limitation for claims of employment discrimination.

*Id.* at 335, 434 S.E.2d at 54. We note that our decision also reaches a disharmonious result with regard to intrastate uniformity of statutes of limitations for claims of disability discrimination. This state of disharmony is nonetheless consistent with the federal approach to section 1981 and section 1983 claims, which often involve parallel state claims controlled by state statutes of limitations that are different from the state stat-

**3.** Under Title VI,

No person in the United States shall, on grounds of race, color or national origin, be excluded from participation in, denied the benefits of, or be subjected to discrimination under any program receiving federal assistance. 42 U.S.C. § 2000d (1994).

**4.** Under Title IX,

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any educational program or activity receiving federal assistance. 20 U.S.C. § 1681(a) (1994).

utes of limitations applicable to their federal counterparts.

## II.

■ Vaughn also argues that the district court erred in dismissing her Rehabilitation Act claim on the ground that it was not supported by sufficient evidence that her claim involves a federally funded program. Vaughn does not appear to dispute the fact that she has not met her burden of presenting evidence on the issue of federal funding. Instead, she complains that NWA had not produced discovery regarding its federal funding. It appears, however, that Vaughn had more than sufficient time, at least eight months, to conduct discovery on this issue and to bring a motion to compel, if necessary.

Vaughn maintains that because NWA did not raise the federal funding issue until its motion for summary judgment, she did not have sufficient opportunity to address the issue in discovery. We note, however, that it is she who has the burden of establishing the elements of her case and that the issue of federal funding is often a rather significant element in cases brought under the Rehabilitation Act. *See, e.g., Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202 (9th Cir.1984)(dismissing plaintiff's Rehabilitation Act Claim for failure to establish federal funding element despite plaintiff's arguments that Delta Airlines received (1) federal mail subsidies, (2) federal funding for servicing small communities, and (3) a variety of other indirect federal funding).

In light of the district court's broad discretion in directing discovery and the significant amount of time Vaughn had to investigate and conduct discovery on her Rehabilitation Act claim, we cannot say that the district court abused discretion by denying her motion to compel and by dismissing her claim, once NWA had moved for summary judgment.

## III.

Vaughn also pled a claim of negligence against NWA for permitting its agent to refuse, negligently, to check her third heavy piece of luggage in violation of NWA's own policy, and for failing to assist her in compliance with policies of NWA and regulations of the Federal Aviation Administration. The district court held that this negligence claim was preempted by the Minnesota Human Rights Act.

In *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374 (Minn.1990), the Minnesota Supreme Court addressed

> whether an employee can maintain against her employer both a statutory cause of action for sexual harassment under the Minnesota Human Rights Act (MHRA) and a common law cause of action for battery, when both claims arise from the same set of operative facts.

*Id.* at 377. The court first noted that the purposes behind the two causes of action were different. *Id.* at 378. Despite the exclusive remedy provision of the MHRA, Minn.Stat. § 363.11, the court held that "a sexual harassment action brought pursuant to the MHRA does not bar a parallel action for common law battery." *Id.* at 379.

■ Likewise, we hold that a claim for common law negligence is not preempted by the MHRA, even if the claim could have been brought under the MHRA had it been timely.[5] Vaughn's negligence claim was not brought under the MHRA and is not dependent upon duties arising under that Act. As Vaughn's counsel pointed out during oral argument, NWA allegedly agreed to accept up to three bags at its baggage check-in counter. According to Vaughn, NWA's negligent breach of this duty was the cause of her injuries. In addition, Vaughn alleged below, as well as on appeal, duties owed to her under federal regulations.

---

5. The district court relied on a non-precedential unpublished decision of this court in support of its decision: *Wise v. Digital Equip. Corp.*, No. C9–94–461, 1994 WL 664973 (Minn.App. Nov. 29, 1994), *review denied* (Minn. Jan. 25, 1995). But in *Wise*, this court held that a common law claim was preempted by the MHRA because the plaintiff was alleging breach of a duty that was created by the MHRA itself. In this case, Vaughn is not alleging that the duty breached was created by the MHRA. Rather, she relies on NWA policies and federal regulations as the source of the duties that were allegedly breached.

Finally, we note that the law has traditionally imposed on common carriers a duty of "the highest degree of care and foresight for the safety of its passengers consistent with its undertaking." *Jam v. Independent Sch. Dist. No. 709*, 413 N.W.2d 165 (Minn.App.1987), *review denied* (Minn. Nov. 24, 1987); *see Werner v. Chicago & N.W. Ry. Co.*, 105 Wis. 300, 81 N.W. 416, 418 (1900) (common carrier defendant "was certainly bound * * * in view of [plaintiff's] age and condition, to render such reasonable assistance as to enable her * * * to alight from the train in safety"). The MHRA was not enacted to cut short the time within which a disabled person may bring an action for the breach of this age-old common law duty.

Without fully addressing all of the various potential theories of recovery under common law negligence that may be applicable, we hold only that Vaughn's negligence claim is not preempted by the MHRA and thus is not barred by the MHRA's one-year statute of limitations.

### DECISION

The district court erred by applying the MHRA's one-year statute of limitations to Vaughn's federal claims. Discrimination claims under the Rehabilitation Act and the Air Carrier Access Act are limited by Minnesota's six-year statute of limitations for personal injury claims, Minn.Stat. § 541.05, subd. 1(5). The district court did not abuse discretion by dismissing Vaughn's Rehabilitation Act claim for failure to produce sufficient evidence of a federally funded program. Vaughn's negligence claim is not preempted by the MHRA, and it should not have been dismissed under that Act's one-year statute of limitations.

**Affirmed in part, reversed in part, and remanded for further proceedings.**