ELEANOR SMITH, Plaintiff-Appellee and Cross-Appellant, *v.* CHICAGO LIMOUSINE SERVICE, INC., Defendant-Appellant.—(Ned Cassolo, Defendant-Cross-Appellee.)

First District (5th Division)   No. 81—0508

Opinion filed September 3, 1982.

Morton A. Kier, of Chicago (Marshall D. Ossey, of counsel), for appellant.

John C. Erb, of Paul B. Episcope, Ltd., of Chicago and Lord, Bissel & Brook (Hugh C. Griffin, of counsel) for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff Eleanor Smith filed suit against Chicago Limousine Service, Inc., and its driver, Ned Cassolo, for personal injuries suffered when she fell upon entering the defendants' limousine on December 23, 1976. Following a jury trial, the jury rendered a verdict in favor of the defendant Cassolo, and against the defendant Chicago Limousine Service, Inc., in the sum of $60,000, from which judgment Chicago Limousine Service, Inc., appeals. Plaintiff cross-appeals from the judgment in this case in favor of Cassolo, and requests judgment notwithstanding the verdict, or in the alternative, moves for a new trial as to Cassolo only.

The issues on appeal are:

(1) whether a verdict against an employer based upon its independent acts of negligence is legally inconsistent with a verdict in favor of a named employee;

(2) whether the jury was improperly instructed;

(3) whether the trial court erred in denying the defendant's posttrial motion; and

(4) whether the verdict in favor of the defendant Cassolo was against the manifest weight of the evidence.

Plaintiff testified that she resided with her husband in Massachusetts and was 73 years old in 1976. She had undergone two hip operations, including a total hip replacement in 1974, and consequently walked with a limp due to a slight shortening of her left leg. Although she was able to walk with a cane, she had difficulty in climbing stairs or in entering vehicles. Her ordinary method of entering a vehicle was to "back" towards the car by positioning herself on the car seat with her legs placed outside the vehicle, whereupon she would lift and pivot her legs into the car.

She further testified that her daughter, Dr. Ellen Vandermeulen, and son-in-law, had made arrangements with Chicago Limousine Service, Inc., for a limousine to pick herself and her husband up at O'Hare airport in Chicago, Illinois, upon their arrival in Chicago for a Christmas visit.

When plaintiff and her husband arrived at O'Hare airport on December 23, 1976, they eventually met the driver, Ned Cassolo, on the lower level of the terminal outside of the concourse area, whereupon he led them to the parked limousine and opened the rear door of the limousine for the plaintiff.

During direct examination, she was questioned as to her actions after the chauffeur opened the door. She stated, "I thought that was a signal for me to get in. So I saw him go leave around, and I thought

he was right there with me ***," at which point her attorney interrupted her to ask the location of her husband at that time. She responded that he had left with the luggage. When asked again what the chauffeur did after he opened the door, she stated that she thought that he was right with her.

However, when questioned later concerning her actions after the rear door was opened, on cross-examination, the following exchange took place:

"Q. At this point, the rear door was open?

A. Yes, sir.

Q. Then the chauffeur went to the rear, is that correct?

A. The chauffeur came by my side and went in back towards the back, yes, sir, after he opened the door."

Plaintiff then stated that the rear seat of the limousine was positioned so far back that she was unable to enter the vehicle in her usual manner, but had to step into the car first. She was holding her cane in her right hand and her purse over her left arm. She did not hold onto the strap on the back of the front seat. As she stepped into the vehicle with her "better" right foot, she started to lose her balance and she testified that she reached behind her towards the driver for help. She fell face first into the vehicle, sustaining multiple fractures of the knee and shoulder. Subsequently, plaintiff underwent surgery to remove her kneecap, was confined to a hospital for seven weeks, and received five months of therapy.

Alvin Golub, president of Chicago Limousine Service, Inc., testified pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60), and stated that the defendant carrier was engaged in the business of carrying passengers for hire.*

At the time of the incident, Golub was primarily responsible for dispatching calls. According to company policy, the dispatcher would "pass on information to its driver at the time the order came in."

Golub testified that he was contacted by plaintiff's son-in-law's secretary to make the necessary arrangements. He was told that plaintiff was elderly, had trouble walking, had "had an operation or was sick," and would need a helping hand. He responded that "[w]e would be more than happy to assist them the best we could, because that's our business."

---

*Alvin Golub testified that Chicago Limousine Service, Inc. was a limited partnership co-owned by himself and his brother Harold Golub. Since the nature of the defendant's business entity is not in issue on appeal, we need not address the discrepancy disclosed by the record.

Golub admitted that he did not record plaintiff's disabilities on any order sheet or communicate any instructions regarding the plaintiff to the driver, Cassolo.

The defendant driver, Ned Cassolo, was called to testify pursuant to section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 60.) He testified that he met the plaintiff and her husband on the lower level of the terminal on the inside of the concourse, and noticed that plaintiff was walking with a limp and using a cane. While her husband was still at her side, he asked her if she needed any help, to which she responded "no."

When they reached the car, Cassolo opened the rear door of the limousine for the plaintiff, who was 15 feet behind him, and immediately proceeded to the rear of the vehicle with plaintiff's husband to load luggage. He did not wait for plaintiff because "she didn't need no help" based upon her earlier response to the contrary.

Harold Golub, called as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60) testified that a dispatcher for the limousine service might or might not relay special instructions depending upon who had called and how important they were or who they were. He stated that he personally would not have taken a call to pick up an elderly person who had difficulty walking because "we are not an ambulance business. We don't touch people. I don't want to touch people."

Golub testified that all drivers were specifically instructed, as a matter of company policy, not to touch passengers entering the limousine, although passengers exiting the vehicle were to be assisted.

Plaintiff's daughter, Dr. Ellen Vandermeulen, testified for plaintiff that she and her husband hired a limousine service because they wanted to make sure that plaintiff received the assistance she needed due to her age and recent hip displacement.

Following the close of the evidence, the plaintiff tendered *inter alia*, instruction No. 17, Illinois Pattern Instructions, Civil, No. 20.01 (2d ed. 1971) (hereinafter IPI), over defendant's objection, which set forth that defendant, Chicago Limousine Service, Inc., was negligent in that it,

"(c) Failed to advise its employee that the plaintiff was physically disabled and infirmed.

(d) Failed to advise its employee that it had agreed to provide assistance and additional care to its passenger who it knew to be physically disabled and infirmed.

(e) Failed to give proper and adequate instructions and training to its employees on the appropriate manner in which to render

assistance and additional care to its passenger who was disabled and infirmed."

Following deliberation, the jury returned a verdict in favor of the defendant, Ned Cassolo, and against the defendant, Chicago Limousine Service, Inc.

OPINION

■■ Initially, we review the standard of care owed by defendant Chicago Limousine Service, Inc., to its passengers. Chicago Limousine Service, Inc., was a common carrier. A line of Illinois cases indicates that while a common carrier owes its passengers the highest degree of care consistent with the practical operation of its vehicles (*Loring v. Yellow Cab Co.* (1975), 33 Ill. App. 3d 154, 337 N.E.2d 428) it cannot be an absolute insurer of the safety of its passengers (*Morris v. Chicago Transit Authority* (1975), 28 Ill. App. 3d 183, 328 N.E.2d 208) and it is not responsible for personal injuries sustained by them in the absence of some unjustifiable act of commission or omission. (*Kerby v. Chicago Motor Coach Co.* (1960), 28 Ill. App. 2d. 259, 171 N.E.2d 412.) Thus, a common carrier cannot be held liable for injuries suffered by a passenger unless its negligence was the proximate cause of the injuries. *Lutz v. Chicago Transit Authority* (1962), 36 Ill. App. 2d 79, 183 N.E.2d 579.

Consonant with these legal principles, we are of the opinion that the injuries suffered by plaintiff were not proximately caused by any negligence on the part of either of the defendants, Cassolo or Chicago Limousine Service, Inc.

We first consider whether defendants breached any duty of care as a common carrier towards its passenger. As to defendant Chicago Limousine Service, Inc., plaintiff specially argues that it breached its duty of care by failing to advise Cassolo of plaintiff's infirmity and failing to give proper and adequate instructions on the appropriate manner in which to render her assistance. Plaintiff further argues that defendant Cassolo breached his duty to exercise the highest degree of care for her safety.

With respect to the latter argument, the record discloses that Cassolo, who had observed the plaintiff as she walked towards him with a cane, asked her if she needed any assistance. She refused. Both the driver and plaintiff's husband had gone to the rear of the limousine to load luggage when plaintiff entered the vehicle. The driver testified that he did not further assist her based upon her original refusal of assistance.

■■ Given her refusal, the driver was precluded from giving her

any additional and unwarranted assistance. Under these circumstances, we find that the driver had fulfilled his duty of care towards the plaintiff.

As to the defendant Chicago Limousine Service, Inc., we do not find merit in plaintiff's argument that defendant's failure to give proper and adequate instructions and training to its employee driver on the appropriate manner to render assistance to an infirmed passenger was the proximate cause of plaintiff's injuries.

Under the facts on the case, the only instruction that could have been given would be to inform the driver of plaintiff's infirmity and to provide any assistance that she would reasonably require. Our examination of the record discloses that plaintiff's counsel has never indicated what the driver could have been instructed to do, which he did not, in fact, do, or even what he could have done as plaintiff entered the car.

However, even assuming *arguendo* that the carrier had a duty to instruct its driver, whether or not the defendant had told its driver to give the plaintiff assistance could not be a proximate cause of her injuries where the driver had offered assistance which she said that she did not need.

Our review of the record further discloses that the plaintiff did not refute or deny the driver's testimony that she did not need help. Moreover, plaintiff testified on two occasions that the driver went to the back of the car to load luggage with her husband, giving rise to a presumption that she knew that the driver was not at the door to assist her.

In addition, we note that the plaintiff's tendered Instruction No. 17, IPI Civil No. 20.01, does not elaborate as to what the supposedly remedial instructions to the driver would consist of.

As the court in *Kincl v. Hycel, Inc.* (1977), 56 Ill. App. 3d 772, 787-88, 372 N.E.2d 385 (a case which defendant cites on its own behalf), stated: "Negligent conduct cannot be the proximate cause of an injury, unless there is evidence that but for the conduct, the injury would probably have not resulted." For reasons previously discussed, we find that there is no evidence apparent of record which reveals that but for the defendants' conduct, the injury would not have resulted.

■ Consequently, we find that any of defendants' acts or omissions were not the proximate cause of plaintiff's injuries in the case at bar.

■ As an independent ground for our decision, we note the legal maxim that there can be no liability on the part of a principal under

the application of the *respondeat superior* doctrine unless the agent is also held to be liable. *Gramm v. Armour & Co.* (1971), 132 Ill. App. 3d 1011, 271 N.E.2d 52.

In *Rakus v. Black* (1965), 55 Ill. App. 2d 438, 442, 204 N.E.2d 611, the court quoted with approval from *Bunyan v. American Glycerin Co.* (1923), 230 Ill. App. 351, 354:

"In this State the law is well settled that where an action on the case is brought against two defendants and one of them is liable only on account of the rule of *respondeat superior* for the negligence of the other, if the latter is found not guilty such finding is a complete bar to the action against the former."

Accordingly, we find that the verdict against the defendant Chicago Limousine Service, Inc., was against the manifest weight of the evidence, and we need not address the other issues raised by defendant Chicago Limousine Service, Inc.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed as to defendant Chicago Limousine Service, Inc., and affirmed as to defendant Ned Cassolo. Plaintiff's requests for judgment notwithstanding the verdict, or in the alternative motion for a new trial as to Cassolo only are hereby denied.

Reversed in part; affirmed in part.

SULLIVAN, P. J., and MEJDA, J., concur.