**Sadie Pearl VAUGHN, Respondent,**

v.

**NORTHWEST AIRLINES, INC., Appellant.**

**No. C7–95–2459.**

Supreme Court of Minnesota.

Feb. 6, 1997.

Meagher & Geer, P.L.L.P., Donald Chance Mark, Jr., Richard L. Pemberton, Jr., Brian R. Sattler, Minneapolis, for appellant.

Larry Leventhal and Associates, Michael C. Hager, Minneapolis, for respondent.

## OPINION

KEITH, Chief Justice.

In this case we must identify the proper limitations period for a disability discrimination claim under a provision of the federal Air Carriers Access Act, 49 U.S.C. § 1374(c) (1988) (current version at 49 U.S.C. § 41705 (1994)) (ACAA), and decide whether a state common-law negligence claim against a common carrier for failure to assist a disabled passenger with carry-on baggage exists and survives preemption by the Minnesota Human Rights Act, Minn.Stat. § 363.03, subd. 3(a) (1994) (MHRA). Defendant-appellant Northwest Airlines, Inc. (Northwest) prevailed in the district court on a motion for summary judgment against plaintiff-respondent Sadie Pearl Vaughn. The district court ruled that Vaughn's ACAA claim was time barred under the MHRA's one-year limitations period, and that the MHRA preempted her negligence claim. The court of appeals reversed, holding that ACAA claims filed in this state are subject to Minnesota's residual six-year statute of limitations for personal injury actions, and that Vaughn's negligence claim survives the MHRA. *Vaughn v. Northwest Airlines, Inc.*, 546 N.W.2d 43, 50–51 (Minn.App.1996). Northwest petitioned for further review. We reverse the court of appeals and reinstate summary judgment

with respect to Vaughn's ACAA claim, but we uphold the recognition and preservation of Vaughn's common-law negligence claim against Northwest.

## I.

Accepting her factual allegations as true, Sadie Pearl Vaughn suffered injuries while carrying and attempting to stow her baggage on a Northwest flight on October 11, 1992 at the Minneapolis–St. Paul International Airport. Vaughn was travelling from Minneapolis to Lansing, Michigan, where she resides. Vaughn arrived at the airport with a suitcase, a box, a garment bag, a purse satchel, and a paper bag containing her coat and umbrella. Before boarding her flight to Michigan, Vaughn sought to check the suitcase, the box, and the garment bag. She explained to the Northwest ticket agent that she was under a doctor's care, that she had been instructed not to tax or strain herself, and that she was physically disabled, which limited her ability to carry heavy baggage. Vaughn suffers from fibromyalgia, a connective tissue disorder.

The Northwest agent told Vaughn that she would have to carry one of the items on board with her unless she could pay a $45 fee. Vaughn thought that the agent was wrong about the fee policy, but the agent denied Vaughn's request to speak with someone else or to make another arrangement given her disability. Vaughn was unable to pay the $45 fee because her checkbook was packed and she did not have enough cash or a credit card. The Northwest agent suggested that Vaughn carry her 30–pound garment bag on board the airplane. A motor cart was summoned to take Vaughn to the boarding gate for her flight to Lansing.

After leaving the ticket counter, Vaughn informed three Northwest employees that she was physically disabled and asked each for help boarding the airplane and stowing her garment bag. She was denied assistance after each request—while travelling to the boarding gate, at the boarding gate, and on the airplane. Apparently unable to transport all of her carry-on baggage at one time, Vaughn had to make second trips to load the garment bag onto the airplane, and to unload

the bag from the airplane. While carrying and stowing her baggage onto and in the airplane, Vaughn asserts that she injured her back, chest, neck, arm, hand, and right shoulder, and permanently injured her left shoulder.

Exactly two years later, Vaughn filed suit against Northwest in Hennepin County District Court to recover damages for her alleged injuries. Vaughn asserted three causes of action: (1) discrimination under the ACAA, 49 U.S.C. § 1374 (1988); (2) negligence under state common law; and (3) discrimination under the federal Rehabilitation Act, 29 U.S.C. § 701 (1994).

The district court granted Northwest's motion for summary judgment. First, the court concluded that Vaughn's ACAA claim was time barred because, in the absence of a federal limitations period, the most analogous state limitations period was one year under the MHRA, Minn.Stat. § 363.06, subd. 3. Second, the court concluded that Vaughn's negligence claim was preempted by the cause of action for discrimination in the MHRA, Minn.Stat. § 363.03, subd. 3(a). Third, the court dismissed Vaughn's Rehabilitation Act claim as unsupported.

The court of appeals reversed in part. The court affirmed summary judgment against Vaughn's Rehabilitation Act claim, *Vaughn*, 546 N.W.2d at 51—which is not at issue on this appeal—but reversed with respect to the remaining two claims. The court held that the ACAA claim was timely because, under *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the proper state statute of limitations was Minnesota's residual 6–year limitation for personal injury actions, Minn.Stat. § 541.05, subd. 1(5). *See Vaughn*, 546 N.W.2d at 50. The court also relied on *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 379 (Minn.1990), to conclude that the MHRA did not preempt Vaughn's negligence claim, which is based on "age-old" duties of common carriers. *See Vaughn*, 546 N.W.2d at 52.

## II.

■ The first issue is the proper limitations period for Vaughn's ACAA disability discrimination claim under 49 U.S.C. § 1374(c) (1988) (current version at 49 U.S.C. § 41705 (1994)).

As an initial matter, we emphasize that § 1374(c) of the ACAA is the only provision at issue on this appeal. In her complaint, Vaughn cited subsections (a), (b), and (c) of § 1374 (current versions at 49 U.S.C. §§ 41310, 41501, 41702, 41705 (1994)). However, the district court dismissed all of Vaughn's claims, and § 1374(c) is the only provision cited in Vaughn's briefs to this court and to the lower courts. Therefore, Vaughn waived the right to appeal the dismissal of her § 1374(a) and (b) claims. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).[1]

Congress did not enact a limitations provision applicable to Vaughn's ACAA claim. In the absence of a federal limitations period for a federal cause of action, the most closely analogous or appropriate limitations period should ordinarily be borrowed from the law of the forum state. *Reed v. United Transp. Union*, 488 U.S. 319, 322–25, 109 S.Ct. 621, 624–26, 102 L.Ed.2d 665 (1989); *Board of Regents of the Univ. of New York v. Tomanio*, 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980), *modified in Wilson v. Garcia*, 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). A federal time limitation should be judicially crafted or borrowed from a clearly more analogous federal statute only if the result is significantly more consistent with federal policy. *Reed*, 488 U.S. at 323–24, 109 S.Ct. at 624–25; *Wilson*, 471 U.S. at 270 & n. 21, 105 S.Ct. at 1944 & n. 21. Although the forum state's law governs the length of the proper limitations period and certain related issues such as tolling and application, the characterization of the federal claim and the method for selecting a state limitations period is ultimately a matter of federal law. *See Wilson*, 471 U.S. at 269–70, 105 S.Ct. at 1943–44; *UAW*

---

1. The ACAA provisions cited in Vaughn's complaint were recodified on July 5, 1994—3 months before Vaughn filed suit, but about 21 months after the alleged discrimination occurred. *See* Act of July 5, 1994, Pub.L. No. 103–272, sec. 1, 108 Stat. 745, 1141 (1994). For the purposes of this case, we consider the statute as written when Vaughn allegedly suffered discrimination by Northwest, although the recodified version of § 1374(c) is substantially similar.

*v. Hoosier Cardinal Corp.,* 383 U.S. 696, 706, 86 S.Ct. 1107, 1113–14, 16 L.Ed.2d 192 (1966).

Northwest is correct that the Minnesota Human Rights Act clearly contains the most analogous cause of action in state law. Although broader in scope, the MHRA sets out a cause of action for disability discrimination nearly identical to § 1374(c) of the ACAA. Vaughn alleges discrimination based on her disability by a provider of a public service or accommodation. Similarly, the MHRA makes it an unfair discriminatory practice

> to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of race, color, creed, religion, disability, national origin, marital status, sexual orientation, or sex * * *.

Minn.Stat. § 363.03, subd. 3(a)(1). A "disabled person" is one who has a physical, sensory, or mental impairment which materially limits one or more major life activities; has a record of such an impairment; or is regarded as having such an impairment. *Id.* § 363.01, subd. 13. A "disability" is a condition or characteristic that renders a person disabled. *Id.* A "place of public accommodation" includes any business or transportation facility whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public. *Id.* § 363.01, subd. 33.

At the time of Vaughn's alleged injuries, the ACAA included essentially the same prohibition against discrimination and protected essentially the same class of disabled persons:

> (1) No air carrier may discriminate against any otherwise qualified handicapped individual, by reason of such handicap, in the provision of air transportation.
> (2) For the purposes of paragraph (1) of this subsection the term "handicapped individual" means any individual who has a physical or mental impairment that sub-

stantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment.

49 U.S.C. § 1374(c). The current version of the ACAA is not materially different. *See* 49 U.S.C. § 41705 (1994); Act of July 5, 1994, sec. 6(a), 108 Stat. at 1378 (stating that no substantive change was intended by recodification).

Vaughn does not contest the proposition that the MHRA's disability discrimination provision is the most analogous state statute. Nevertheless, Vaughn argues that Minnesota's six-year residual statute of limitations for personal injury actions applies to her ACAA claim. *See* Minn.Stat. § 541.05, subd. 1(5). Vaughn asserts that, under federal law, all federal discrimination claims must be characterized as personal injury claims. *See Wilson,* 471 U.S. at 269–70, 105 S.Ct. at 1943–44 (stating that characterization of federal claims is a matter of federal law). She contends that this characterization precludes an analogy to state disability discrimination law.

Vaughn correctly points out that the United States Supreme Court has modified the borrowing approach for violations of certain federal civil rights statutes. In *Wilson,* the Court decided that the purposes of 42 U.S.C. § 1983 (1994) [2] would be served and that much confusion could be avoided by applying a forum state's personal injury limitations period to all § 1983 claims, instead of analogizing on a case-by-case basis for all the contexts in which § 1983 actions can arise. *See Wilson,* 471 U.S. at 279–80, 105 S.Ct. at 1948–49. When it recognized that most states have more than one personal injury limitations period, the Court again refined the rule for § 1983 actions in *Owens v. Okure,* 488 U.S. 235, 243, 248–50, 109 S.Ct. 573, 578, 580–82, 102 L.Ed.2d 594 (1989) (endorsing a "practical inquiry" that promotes ease and predictability in borrowing, and holding that if the forum state has more than one personal injury limitations period, then

---

**2.** Section 1983 provides:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the depriva-

tion of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * *.

the residual or general limitations period applies). The Supreme Court also followed *Wilson*'s borrowing approach for claims under 42 U.S.C. § 1981 (1994),[3] another federal civil rights statute, in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661–62, 107 S.Ct. 2617, 2621–22, 96 L.Ed.2d 572 (1987) (characterizing discrimination as an injury to the individual rights of a person, akin to personal injury actions); *see also Morse v. University of Vermont*, 973 F.2d 122, 126 (2d Cir.1992).

The Eighth Circuit recently extended *Wilson* outside of the § 1983 and § 1981 context. *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 618 (8th Cir.1995), concluded that Minnesota's six-year personal injury limitations period applied to federal race and gender discrimination claims brought under Title IX of the Education Amendments of 1972 and Title VI of the Civil Rights Act of 1964. The court analogized § 1983 and § 1981 claims to Title IX and Title VI claims, and rejected the argument that the MHRA's one-year limitation period applied. *See Egerdahl*, 72 F.3d at 618. The ACAA was not at issue in *Egerdahl*.

Vaughn adds that several courts have applied state personal injury limitations periods to discrimination claims under the federal Rehabilitation Act, which precludes disability discrimination under any federally funded program or activity. *See* 29 U.S.C. § 794 (1994); *Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 933 (7th Cir.1993), *cert. denied*, 511 U.S. 1071, 114 S.Ct. 1648, 128 L.Ed.2d 367 (1994); *Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980, 982–83 (5th Cir.1992); *Morse*, 973 F.2d at 125–27; *Henrickson v. Sammons*, 263 Ga. 331, 334–35, 434 S.E.2d 51, 53–54 (1993) (following precedent characterizing the Rehabilitation Act as redress for "injuries to the person"). However, when faced with a closely analogous state discrimination claim, courts are split over whether the forum state's residual personal injury limitations period applies to Rehabilitation Act claims. *Compare Southerland v. Hardaway Management Co., Inc.*, 41 F.3d 250, 254–55 (6th Cir.1994) (borrowing the forum state's one-year personal injury limitations period rather than the five-year limitation for the state's disability discrimination law) *and Henrickson*, 263 Ga. at 334–35, 434 S.E.2d at 53–54 (refusing to borrow the forum state's limitations period for disability discrimination claims) *with McCullough v. Branch Banking Trust Co.*, 35 F.3d 127, 129–30 (4th Cir.1994) (borrowing the forum state's two-year limitations period for disability discrimination claims), *cert. denied*, —— U.S. ——, 115 S.Ct. 1101, 130 L.Ed.2d 1069 (1995) *and Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222, 223–25 (4th Cir.1993) (borrowing the forum state's one-year limitations period for disability discrimination claims), *cert. denied*, 510 U.S. 1073, 114 S.Ct. 881, 127 L.Ed.2d 77 (1994). Moreover, the Rehabilitation Act is in some senses broader in scope than the ACAA. Vaughn's ACAA claim only prohibits disability discrimination by air carriers in the provision of air transportation, while the Rehabilitation Act reaches disability discrimination in all federally funded programs. *Wilson*'s concern for certainty in borrowing is more relevant to Rehabilitation Act claims.

We conclude that *Wilson*, *Owens*, and *Goodman* do not preclude adoption of the MHRA's one-year limitations period. Most precisely, § 1374(c) of the ACAA is a disability discrimination claim and it has an obvious analog in Minnesota law. We do not believe that the Supreme Court has mandated that narrow disability discrimination claims against private parties must be artificially characterized as "personal injury" actions. In this case, as in most, analogy remains the borrowing rule.

The reasoning and results in the Court's § 1983 and § 1981 cases are distinguishable on several grounds. First, the Court sought to solve a particular problem in *Wilson*, *Owens*, and *Goodman*—the difficulty of case-by-case analogies for civil rights claims that encompass a wide variety of potential grievances and remedies. Section 1983 creates a

---

**3.** Section 1981(a) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

remedy for violations, under color of state law, of rights, privileges, or immunities secured by the United States Constitution and certain federal statutes. *Maine v. Thiboutot,* 448 U.S. 1, 4–8, 100 S.Ct. 2502, 2504–06, 65 L.Ed.2d 555 (1980). This difficulty in analogizing to state law and the uncertainty it creates is not present for the much narrower disability discrimination claim under § 1374(c) of the ACAA. Vaughn's ACAA claim is easily analogized to the MHRA. Hence, the practical considerations underlying cases like *Wilson, see Owens,* 488 U.S. at 248–50, 109 S.Ct. at 580–82, do not require courts to generically characterize § 1374(c) as a personal injury claim.[4]

Second, *Wilson* relied on the unique nature of § 1983, which helps protect federal rights from violation by state or local officials or private citizens acting under color of state law. *See Wilson,* 471 U.S. at 271–75, 279, 105 S.Ct. at 1944–47, 1948–49; *see also Owens,* 488 U.S. at 248–49, 109 S.Ct. at 580–82. In light of the history and purposes of § 1983, the Court concluded that § 1983 actions would be protected from discrimination by state policy makers by anchoring such claims to a single, general, residual limitations period. *See Owens,* 488 U.S. at 248–50, 109 S.Ct. at 580–82; *Wilson,* 471 U.S. at 279, 105 S.Ct. at 1948–49. But the concern for preserving § 1983's vitality against hostile state policy is difficult to apply in the context of this case. Section 1374(c) of the ACAA creates a private cause of action against private air carriers. State legislative discrimination is a far less pressing concern here than in *Wilson.*

Third, *Goodman* emphasized that both § 1983 and § 1981 encompass a broad range of remedies, and noted that following the *Wilson* borrowing approach was "particularly" appropriate because the two claims overlapped. *Goodman,* 482 U.S at 661–62, 107 S.Ct. at 2621–22. Although § 1981 protects private contractual rights, its breadth prompted *Goodman. Goodman* should be taken as a minor extension of *Wilson* to

certain civil rights claims, not as a general principle for all federal discrimination claims. The narrow scope of § 1374(c) of the ACAA and its undeniable similarity to the MHRA require that a one-year limitations period govern Vaughn's claim. *See Wolsky,* 1 F.3d at 224–25.

Furthermore, a one-year limitations period seems consistent with federal policy. The Americans with Disabilities Act (ADA) prohibits employment discrimination against qualified disabled workers and requires that administrative charges be filed within 180 days, or within 300 days if proceedings were first instituted in a state human rights department. *See* 42 U.S.C. § 12117(a) (1994) (incorporating 42 U.S.C. § 2000e–5(e)(1)). Of course, these provisions are not statutes of limitations for civil actions. The ADA, like the ACAA, does not contain a statute of limitations for private civil actions and the proper borrowing analysis for the ADA seems no less involved than the analysis for the ACAA. *See, e.g., Roe v. County Comm'n of Monongalia County,* 926 F.Supp. 74, 77–78 (N.D.W.Va.1996) (applying a two-year limitations period from the state Human Rights Act to an ADA public accommodations claim). Nevertheless, we take the ADA administrative claim provisions as an indication that a one-year limitations period for Vaughn's ACAA claim is not unduly inconsistent with federal disability discrimination policy.

We also note that our decision fosters intrastate uniformity for disability discrimination claims. This outcome is consistent with Minnesota's policy favoring prompt resolution of discrimination claims, Minn.Stat. § 363.06, subd. 3, which may be difficult to advance and defend long after the fact and which are based on injuries often easily recognized. *Cf. Wilson,* 471 U.S. at 271, 105 S.Ct. at 1944 ("By adopting the statute governing an analogous cause of action under state law, federal law incorporates the State's judgment on the proper balance between the

---

4. In fact, *Wilson's* characterization of § 1983 claims as essentially personal injury actions was prompted only after the Court decided that 42 U.S.C. § 1988(a) directed courts to select the "one most appropriate statute of limitations for all § 1983 claims." *Wilson,* 471 U.S. at 275, 105

S.Ct. at 1947. Only then did the Court proceed to characterize § 1983 claims as personal injury claims—"the best alternative available." *Id.* at 276, 105 S.Ct. at 1947 (referring to the court of appeals' conclusion).

policies of repose and the substantive policies of enforcement embodied in the state cause of action."); *Tomanio*, 446 U.S. at 488, 100 S.Ct. at 1797 ("[I]n general, state policies of repose cannot be said to be disfavored in federal law.").

Vaughn argues that *federal* claim uniformity will be sacrificed if Northwest's position is adopted, assuming that Minnesota courts will follow *Egerdahl* and adopt a 6–year limitations period for § 1981, § 1983, Title VI, Title IX, and Rehabilitation Act claims. *See Egerdahl*, 72 F.3d at 618. However, *Wilson* was concerned with uniformity among the various claims that arise out of the broad scope of § 1983. *See Wilson*, 471 U.S. at 276, 105 S.Ct. at 1947. We do not read *Wilson* to mandate uniform treatment among *all* federal discrimination claims, whether brought against a state official or not. Because they are not before us in the case, we express no opinion regarding the proper limitations periods for the claims considered in *Egerdahl*. We conclude only that the rationale for *Wilson* does not extend to disability discrimination claims under § 1374(c) of the ACAA. It should be clear, therefore, that nothing in this opinion questions the *Wilson* and *Owens* approach for selecting a single, residual, personal injury limitations period for other federal civil rights and discrimination claims, such as those encompassed by § 1983 and § 1981.[5]

Accordingly, we hold that Vaughn's federal Air Carrier Access Act claim under 49 U.S.C. § 1374(c) (1988) is untimely and was properly dismissed.

### III.

■ We next consider whether Vaughn asserts a viable common-law negligence claim. Northwest argues that Vaughn's neg-ligence claim is "preempted" by the Minnesota Human Rights Act, Minn.Stat. § 363.03, subd. 3(a). However, the thrust of Northwest's "preemption" argument is that carriers do not owe a common-law duty to "prevent passengers from injuring themselves in storing their own luggage." Northwest asserts that it certainly owes no duty to assist able-bodied passengers with carry-on baggage, and, therefore, Vaughn's negligence claim is based on her disabled status. Such claims, Northwest argues, may arise only from the MHRA.

Before recovery is allowed on a theory of negligence, the defendant must owe a duty of care to the plaintiff. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53, at 356 (5th ed.1984) [hereinafter Prosser]. A duty is an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. *Rasmussen v. Prudential Ins. Co.*, 277 Minn. 266, 268–69, 152 N.W.2d 359, 362 (1967) (quoting Prosser § 53). As this definition suggests, the scope of common-law duties is ultimately a question of policy. *Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 169 (Minn. 1989).

Carriers are not insurers. But we have long recognized that, under Minnesota common law, carriers have a duty to afford the highest degree of care for the safety of their passengers. *Zuber v. Northern Pac. Ry. Co.*, 246 Minn. 157, 165, 74 N.W.2d 641, 649 (1956) (noting that liability may be avoided by demonstrating a lack of *ordinary* care on the part of the passenger); *see also Ford v. Stevens*, 280 Minn. 16, 19–20, 157 N.W.2d 510, 513 (1968) (stating that the duty of

---

5. At oral argument, Vaughn's counsel raised two additional and meritless arguments. First, counsel argued, without authority, that the MHRA was preempted by federal law and therefore cannot be used for borrowing purposes. We find no support for the assertion that federal preemption—an issue we do not reach in this opinion—is relevant to the borrowing analysis. The Supreme Court has never stated that the rule is dependent upon whether analogous state law claims could have been raised by the plaintiff. Second, counsel offered the surprising assertion that 42 U.S.C. § 1988 precludes analogies to state statutes. The portion of § 1988 to which Vaughn refers does not so state and, in any event, governs only civil rights actions under specific provisions of the United States Code—among which Vaughn's ACAA claim is not included. *See* 42 U.S.C.1988(a) (1994) (governing the Reconstruction Civil Rights Acts, and incorporating "common law, *as modified and changed by the constitution and statutes of the State * * *"* (emphasis added)); *see also Wilson*, 471 U.S. at 267, 105 S.Ct. at 1942. Section 1988 adds nothing to Vaughn's statute of limitations argument.

affording the highest degree of care consistent with the proper conduct of business applies to taxicabs); *Swanson v. Minneapolis St. Ry. Co.*, 252 Minn. 484, 487, 90 N.W.2d 514, 517 (1958) (same for street railways).

    ■ Northwest claims that any duty of care owed its passengers only reaches "affirmative act[s] of negligence" that threaten passenger safety and that refusals to assist are omissions, not commissions. The distinction between misfeasance and malfeasance is well-established in the law of duty. *See* Prosser § 56, at 373. This distinction, however, is largely moot. As we noted last term, common carriers are an exception to our well-established rule that tort liability will ordinarily not be imposed for failure to affirmatively act and prevent harm to another. *Donaldson v. Young Women's Christian Ass'n of Duluth*, 539 N.W.2d 789, 792 (Minn. 1995); *see also* Prosser § 56, at 376. Carrier liability has been imposed for failure to assist passengers in boarding. *See Croom v. Chicago, M. & St. P. Ry. Co.*, 52 Minn. 296, 297, 53 N.W. 1128, 1128–29 (1893); *see also Finney v. Norwood*, 198 Minn. 554, 556, 270 N.W. 592, 593 (1936).

Moreover, disabled passengers are owed a special duty of care by carriers when their disability is made known. The general rule was explained in *Croom*, 52 Minn. at 298–99, 53 N.W. at 1129 (citations omitted):

> If a passenger, because of extreme youth or old age, or any mental or physical infirmities, is unable to take care of himself, he ought to be provided with an attendant to take care of him. But if the company voluntarily accepts a person as a passenger, without an attendant, whose inability to care for himself is apparent or made known to its servants, and renders special care and assistance necessary, the company is negligent if such assistance is not afforded. In such case it must exercise the degree of care commensurate with the responsibility which it has thus voluntarily assumed, and that care must be such as is reasonably necessary to insure the safety of the passenger, in view of his mental and physical condition. This is a duty required by law as well as the dictates of humanity. * * *. Whether the defendant fully performed this duty was a question for the jury.

*Accord Carroll v. St. Paul Union Depot Co.*, 164 Minn. 28, 29–30, 204 N.W. 470, 470–71 (1925) (upholding a jury verdict for the negligent assistance of a disabled passenger in boarding a train).[6] In more recent cases, other jurisdictions have consistently adhered to the rule that carriers owe a special duty of care to assist physically disabled passengers when their disability and need for assistance is known to the carrier. *See, e.g., Montgomery v. Midkiff*, 770 S.W.2d 689, 690 (Ky.Ct. App.1989), *review denied* (Ky. June 21, 1989); *Markwell v. Whinery's Real Estate, Inc.*, 869 P.2d 840, 846 (Okla.1994) (noting carrier duty to provide a safe means for entering and alighting from carrier's vehicle, and an additional duty which may exist because of the passenger's illness, age, or infirmity); *White v. Metropolitan Gov't of Nashville & Davidson County*, 860 S.W.2d 49, 52 (Tenn.Ct.App. 1993), *appeal denied* (Tenn. June 28, 1993); 13 C.J.S. *Carriers* § 547(a) (1990); 14 Am. Jur.2d *Carriers* § 1011 (1964).

We hold that, in some circumstances, the scope of this established duty to the disabled includes assistance with carry-on baggage.[7] *See Croom*, 52 Minn. at 297, 53 N.W. at 1127–28 (noting that the injured elderly passenger was encumbered with baggage). *Cf. Finney*, 198 Minn. at 556, 270 N.W. at 593 (whether a woman encumbered with bundles was contributorily negligent when she slipped on a taxicab's icy runner was a jury question, but the taxi driver's negligent failure to assist her in boarding was established); *LeGrand v. Lincoln Lines, Inc.*, 253 Pa.Super. 19, 23, 384 A.2d 955, 956–57 (Pa.Super.Ct.1978) (noting a passenger's partial blindness, age, and encumbrance with

---

6. This special duty owed to disabled passengers *is not undermined* because state law may no longer allow a common carrier to exclude such passengers. *See* Minn.Stat. § 363.03, subd. 3. The common-law policy endorsing special carrier assistance to the disabled who need it is strong enough to survive, and in fact complements, the legislature's requirement that public accommodations become open to the disabled.

7. We were unable to locate cases in any other state addressing this precise issue.

packages as circumstances from which a duty of special care may have arisen).

■■■ However, *Croom* and other cases imply limitations on this duty of reasonable care in assisting the disabled with carry-on baggage. First, the carrier must have knowledge of the passenger's physical disability and need for assistance with baggage to avoid physical injury. *Cf. Andrade v. Ellefson*, 391 N.W.2d 836, 841–42 (Minn.1986) (emphasizing that actual knowledge, not constructive knowledge, of a dangerous condition is required to impose "a special duty to do something about that condition"); *Washington Metro Area Transit Auth. v. Reading*, 109 Md.App. 89, 111, 674 A.2d 44, 54 (Md.Ct. Spec.App.1996) (collecting cases requiring carrier knowledge of a passenger's disability). A carrier's duty of assistance is triggered when the carrier is in possession of facts that would suggest to a person of ordinary care and prudence that the physically disabled passenger needs assistance to avoid physical injury. *Cf. Ruberg v. Skelly Oil Co.*, 297 N.W.2d 746, 750–51 (Minn.1980) (discussing gas suppliers' duties of care); *White*, 860 S.W.2d at 52 (noting that a passenger's disability must be apparent). Second, the physical injury must have been reasonably foreseeable to the carrier. *See Lundgren v. Fultz*, 354 N.W.2d 25, 28 (Minn.1984) ("The risk reasonably to be perceived defines the duty to be obeyed * * *.") (quoting *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928) ). The passenger is therefore ordinarily required to request assistance before a duty arises on the part of the carrier. *Cf. Smith v. Chicago Limousine Serv., Inc.*, 109 Ill.App.3d 755, 759–60, 441 N.E.2d 81, 85, 65 Ill.Dec. 289, 293 (Ill.App.Ct.1982) (holding that a carrier fulfilled its duty to assist when an infirm passenger refused assistance). If Vaughn can prove the facts alleged in her complaint and meet the test outlined above, then Northwest's agents owed her a duty of reasonable care in assisting her with her carry-on baggage.

Our common law is the result of accumulated experience. It is composed of rules carefully crafted both to reflect our traditions as a state and to address emerging societal needs. *See Miller v. Monsen*, 228 Minn. 400, 407, 37 N.W.2d 543, 547 (1949); *Tuttle v. Buck*, 107 Minn. 145, 148–49, 119 N.W. 946, 947 (1909); *see also* Prosser § 54, at 359. Law is perhaps no substitute for ethics, and most disputes will be and should be resolved outside a courtroom. As a practical matter, tort may never encompass every duty of good citizenship that we commonly expect from each other. But in this case, a legal duty cannot be denied. In accord with *Croom*'s century-old rule of special care for the disabled, our common law clearly requires that a carrier bear the risk of injury to a disabled passenger when the carrier refuses boarding assistance, knows of the disability and need, foresees the harm, and fails to meet a standard of reasonable care. Inclusion and accommodation for the disabled is a valid policy to be advanced by our common law, and disabled passengers may justifiably expect some assistance with carry-on baggage when they need it. Northwest's position is untenable.[8]

## IV.

■■■ The final issue is the least difficult. Northwest argues that even if it owed Vaughn a duty, the Minnesota Human Rights Act preempts her cause of action. *See* Minn. Stat. § 363.03, subd. 3(a). Vaughn responds that the alleged tort was "independent" of the discrimination; she seems to argue that she was injured not only because she was discriminated against (a violation of a statutory duty under the MHRA), but also because Northwest employees failed to help her after being told that she needed it (a violation of a common-law duty).

*Wirig* is the leading case on the preemptive scope of the MHRA. There, we held that the MHRA's prohibition against workplace sexual harassment did not preempt a

8. Of course, the ordinary elements for and defenses to recovery on a negligence theory apply. It should also be clear that the degree of care owed the disabled under these circumstances is *reasonable care*—the care "reasonably necessary to insure the safety of the passenger, in view of his [or her] mental and physical condition," *Croom*, 52 Minn. at 298, 53 N.W. at 1129—not the heightened standard of care for common carriers imposed in other circumstances. *See Smith v. Chicago & N.W. Ry. Co.*, 246 Wis. 628, 634, 18 N.W.2d 352, 354 (1945).

factually parallel common-law battery claim. We emphasized that statutory abrogation of common-law claims must be accomplished by express wording or necessary implication, *Wirig*, 461 N.W.2d at 377–78, and that the MHRA serves a legislative purpose distinct from common-law battery, *id.* at 378–79. However, we foreclosed double recovery for conduct giving rise to more than one claim. Unless the plaintiff presents clear and convincing proof that the acts giving rise to the claims are different in kind, the plaintiff may only recover under one of those claims. *Id.* at 379.

Northwest argues that Vaughn did not allege "separate facts to support a negligence claim," and cites *Melsha v. Wickes Cos., Inc.*, 459 N.W.2d 707, 709–10 (Minn.App.1990). *Melsha* was decided before our decision in *Wirig*, and Northwest's reliance on it is misplaced. *Wirig* precluded double *recovery* when the same conduct forms the basis for both an MHRA claim and a tort claim, but we expressly rejected the notion that factually parallel *causes of action* are mutually exclusive. *See Wirig*, 461 N.W.2d at 379. As Northwest concedes, *Wirig* allowed a battery claim to coexist with an MHRA claim "arising out of the same unlawful conduct."

Vaughn's state common-law negligence claim survives preemption by the MHRA.[9]

Reversed in part, affirmed in part, and remanded.

### DISSENT

GARDEBRING, Justice (dissenting).

I respectfully dissent from the majority's conclusion that the one-year limitations period of the Minnesota Human Rights Act applies to claims under the Air Carrier Access Act (ACAA) and therefore, that Vaughn's ACAA claim was properly dismissed.

First, I want to note my agreement with the majority's initial assertion that "the characterization of the federal claim and the method for selecting a state limitations period is ultimately a matter of federal law." Op. at 738. The Supreme Court has specifically said that, in enacting the "borrowing provision" of federal civil rights law, "Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." *Wilson v. Garcia*, 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985). But, having acknowledged that we are bound in our present task by federal precedent, the majority then commences an unpersuasive effort to distinguish controlling federal case law.

Upon a first examination, the Supreme Court's directive that we refer to "the most closely-analogous" state law of limitations, where Congress has not provided one, *Board of Regents v. Tomanio*, 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980), lends support to the majority's view. Indeed, the MHRA does seem, in some respects, to meet that description. But concluding the analysis with this simplistic test ignores the extensive application of this standard to federal civil rights statutes in many cases since *Tomanio*, beginning of course with *Wilson*. With one exception,[1] virtually every court, both state and federal, that has considered the question of what state limitations period should be applied to federal discrimination claims has held that a state's residual or general limitations period (for personal injury actions) is applicable. *See, e.g., Southerland v. Hardaway Management Co.*, 41 F.3d 250 (6th Cir.1994); *Baker v. Board of Regents*, 991 F.2d 628 (10th Cir. 1993); *Bush v. Commonwealth Edison Co.*, 990 F.2d 928 (7th Cir.1993); *Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980 (5th Cir. 1992); *Morse v. University of Vermont*, 973 F.2d 122 (2d Cir.1992); *Raggi v. Wegmans Food Markets, Inc.*, 779 F.Supp. 705

---

9. Therefore, we do not address Vaughn's argument that the MHRA is itself preempted by federal law, or Northwest's response that, if so, Vaughn's common-law negligence claim is also preempted by federal law. We note that Northwest did not assert preemption as an affirmative defense in its answer to Vaughn's complaint. *See* Minn. R. Civ. P. 8.03. *Cf. Jordan v. Clayton Brokerage Co. of St. Louis, Inc.*, 975 F.2d 539,

541 (8th Cir.1992) (stating that, in federal court, preemption is an affirmative defense that is ordinarily waived if not pleaded), *cert. denied*, 507 U.S. 916, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993).

1. *Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222 (4th Cir.1993).

(W.D.N.Y.1991); *Henrickson v. Sammons,* 263 Ga. 331, 434 S.E.2d 51 (1993).

In particular, I would rely on the recent decision of the 8th Circuit, *Egerdahl v. Hibbing Community College,* 72 F.3d 615 (8th Cir.1995), in which the court of appeals rejected a determination by the Minnesota district court that the MHRA limitations period should be applied to claims arising under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX") and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"). The *Egerdahl* court extended the reasoning of *Wilson* to the Title IX and Title VI claims at issue, noting that it was unlikely that the personal injury limitations period "ever would be, fixed in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect." *Egerdahl,* 72 F.3d at 618 (quoting *Wilson,* 471 U.S. at 279, 105 S.Ct. at 1949).

Given the almost uniform federal court analysis of this issue, in a wide variety of factual and legal contexts, the majority's effort to carve out a distinction for claims arising under the ACAA is not compelling. The only difference identified by the majority between the ACAA and the other federal statutes to which the state personal injury limitations period have been applied is that the other civil rights provisions, particularly the Rehabilitation Act considered in *Bush, Morse* and *Henrickson,* are "broader," i.e., that the ACAA claim prohibits disability discrimination by air carriers and the Rehabilitation Act reaches disability discrimination in *all* federally funded activities. The majority provides no explanation as to why this difference takes it outside the general rule of law articulated in *Wilson* and its progeny.

For these reasons, I would affirm the court of appeals in its ruling that Vaughn's ACAA claims are not time barred.