Coffy L. MOSS, Plaintiff,

v.

ADVANCE CIRCUITS, INC., Mike Maxson, United Steelworkers of America Union, District 33, and its Union President, Wendy Larson, Defendants.

No. 4–96–407 (DSD/JMM).

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 20, 1997.

Jesse Gant III, Gant Law Office, Minneapolis, MN, for plaintiff.

Mary L. Knoblauch, John E. Murray, Gena A. Braaten, Fruth & Anthony, Minneapolis, MN, for defendants Advance Circuits and Mike Maxson.

Scott A. Higbee, Peterson, Engberg & Peterson, Minneapolis, MN for defendants United Steel Workers and Wendy Larson.

## ORDER

DOTY, District Judge.

This matter is before the court on all four defendants' motions for summary judgment and defendants Advance Circuits' and Mike Maxon's motion to strike Exhibits J and K of the affidavit of Kenneth Udoibok (Docket No. 40). Based on a review of the file, record, and proceedings herein, the court grants defendants' motions on all claims except plaintiff's defamation claim. The court dismisses that claim, however, for lack of jurisdiction. The court also grants defendants' motion to strike.

## BACKGROUND [1]

Plaintiff Coffy L. Moss is a resident of the State of Minnesota. Defendant Advance Circuits, Inc., (hereafter "Advance Circuits") is

---

1. A balanced discussion of the relevant background facts is made difficult by plaintiff's failure to make a factual statement in her brief. Instead, plaintiff chose to discuss only certain facts in her argument as they pertain to alleged material facts in controversy.

incorporated and has its principal place of business in the State of Minnesota. Defendant Mike Maxson (hereafter "Maxson") is a supervisor at Advance Circuits. Defendant United Steelworkers of America (hereafter "the Union") is the bargaining representative of employees at the Advance Circuits facility in question. Defendant Wendy Larson at all relevant times was president of the aforementioned local union.

This case involves sundry claims by plaintiff against defendants arising out of plaintiff's employment at Advance Circuits, which began in March 1980, and continues to this day. Moss is a member of the Union, with her employment subject to the collective bargaining agreement between the Union and Advance Circuits.

Plaintiff's claims arise from several incidents at Advance Circuits. On September 8, 1994, Moss punched in for work at 5:00 a.m. instead of her regular starting time of 7:00 a.m. Plaintiff took this action without preauthorization from her supervisor, Keith Moody. Plaintiff claims that when Moody questioned her about her action, he treated her in an aggressive and inappropriate matter and had to be told by plaintiff to "back off." Deposition of Coffy Moss at 74–75. The next day, Moss was informed of a management decision to change the shift allocation in the department where she worked, and as a result plaintiff was transferred to a different shift. Moss claims that the way in which she was informed of the shift change was racially discriminatory because no departmental meeting was called to discuss the change and a Union representative was asked to be present when plaintiff was informed of this change. On September 12, 1994, plaintiff complained to Mike Maxon, Director of Operations of the Specialty Products Division at Advance Circuits, that her change in shift was in retaliation for the September 8, 1994, incident; Maxon, however, informed plaintiff that the decision to change work force allocation had nothing to do with that incident. Plaintiff lodged a complaint with Richard Rogers, the Director of Human Resources at Advance Circuits. During an ensuing meeting between plaintiff,

Moody, and Rodgers, Moody apologized to plaintiff for the September 8, 1994 incident.

On October 5, 1994, the Union filed a grievance with Rodgers stating that plaintiff felt discriminated against and that plaintiff considered Advance Circuits to be a hostile environment. For the first time, plaintiff also alleged that Maxson had treated her poorly during a department meeting.

During the proceedings on plaintiff's grievance, the Union informed Rodgers that Moss believed she had been sexually harassed by Maxson. On November 1, 1994, plaintiff filed a second EEOC charge,[2] alleging race and sex discrimination and retaliation. Moss complained that Maxson made special attempts to talk to her, looked at her breasts when talking to her, showed her a picture of an African–American woman who had recently married a relative of his, introduced plaintiff to his wife and said in a condescending manner that she was his best worker, and, at a company event approached plaintiff after dancing and said "Hey, not bad for a white guy." Deposition of Coffy Moss at 582. Maxson denied harassing plaintiff, but was warned to act appropriately around her. Plaintiff also claims that the Union did not advance her sexual harassment claims at the appropriate time. It is undisputed, however, that these concerns were raised during the grievance process and that Advance Circuits took action in response.

Plaintiff takes umbrage at the behavior of others at Advance Circuits. She alleges that a supervisor said "Yo, mama" to her when passing her in the hall. Deposition of Coffy Moss at 569. She also alleges that another supervisor rubbed her shoulders and back once. Rodgers investigated all of plaintiff's complaints and issued advisory letters to all those involved. Plaintiff has made no further complaints about sexual harassment to Advance Circuits management.

Plaintiff also complains of the failure of Advance Circuits to make her a group leader. Plaintiff alleges that she wanted to be appointed as a group leader in November 1994. Group leaders are appointed and removed by

**2.** Plaintiff's initial EEOC charge, alleging racial discrimination, was filed in July 1984. The

EEOC issued a no probable cause finding in November 1985.

Advance Circuits on a discretionary basis, and even the Union states that the creation and filling of group leader positions is a matter committed to employer prerogative. To be a group leader, an employee must have good performance reviews, good attendance, a cooperative attitude, and at least average knowledge of the production work involved. Affidavit of Mike Maxson (Docket No. 33) at ¶ 8. Defendants Advance Circuits and Maxson allege that plaintiff was not appointed to the position of group leader because of attendance problems. Plaintiff, on the other hand, alleges that her non-appointment was in retaliation for filing her November 1994 EEOC charge.

On June 28, 1995, the United States Department of Criminal Investigative Services (hereafter "DCIS") executed search warrants at the Advance Circuits facility where plaintiff is employed. Plaintiff alleges that, although on vacation at the time, DCIS agents specifically asked for her when they arrived at her department, and that Maxson started a rumor that she was the one responsible for the search. Plaintiff claims that when she returned from vacation she was treated poorly by co–workers.

Plaintiff's complaint and papers also detail the other inequities plaintiff perceives in her employment at Advance Circuits. She claims that only she is required to let her supervisor know when she will need a schedule change, that the company does not allow her to switch shifts as frequently as other employees, and that the company improperly coded one of her absences.

Plaintiff filed her complaint on May 7, 1996, alleging the following claims: (1) racial discrimination and harassment against Advance Circuits, the Union, Maxson, and Larson; (2) aiding and abetting against Maxson and Larson; (3) reprisal and retaliation against Advance Circuits, the Union, Maxson, and Larson; (4) sexual harassment against Advance Circuits and Maxson; (5) defamation per se against Maxson; (6) negligent supervision against Advance Circuits; (7) failure to represent against the Union and Larson; and (8) negligent retention by Advance Circuits. The summary judgment motions and motion to strike currently before the court followed.

## DISCUSSION

### A. Defendants' Motions for Summary Judgment

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248, 106 S.Ct. at 2510. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. at 2512. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts imma-

terial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

Plaintiff's complaint contains eight counts, alleging various wrongs against one or more of the defendants. As an initial matter, the court notes that in her response to defendants' summary judgment motions, plaintiff unilaterally stipulated to the dismissal of Wendy Larson as a defendant in this case. At the hearing on this matter, Larson was dismissed from this action on the record. The court therefore need not address plaintiff's claims of racial discrimination and harassment, aiding and abetting, reprisal and retaliation, and failure to represent as they relate to Larson. Plaintiff has also stipulated to the dismissal of any claims against defendant Maxson arising under Title VII or the MHRA, other than aiding and abetting. The court, therefore, need not discuss plaintiff's racial discrimination or sexual harassment claims as they pertain to Maxson. The court will, however, discuss all of the remaining charges.

### 1. Racial Discrimination and Harassment

Plaintiff's first claim is that defendants Advance Circuits[3] and the Union engaged in conduct constituting racial discrimination and harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 (hereafter "Title VII") and the Minnesota Human Rights Act (hereafter "MHRA").

In order to pursue a claim of discrimination or harassment under Title VII, a plaintiff must exhaust her administrative remedies. 42 U.S.C. § 2000e–5 (b)(c) and (e). " 'Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting con-

ciliatory efforts.' " *Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir.1996) (quoting *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir.1994)). *See also Patterson v. McLean Credit Union*, 491 U.S. 164, 180–81, 109 S.Ct. 2363, 2374–2375, 105 L.Ed.2d 132 (1989). Exhaustion requires that a timely charge of discrimination be filed with the EEOC. 42 U.S.C. § 2000e–5(e)(1). To be timely in Minnesota, a charge of discrimination must be filed with the EEOC within 300 days of the discriminatory act. *Id.* As a result, any factual allegations of the plaintiff arising before January 5, 1994, 300 days before plaintiff filed her first race discrimination charge with the EEOC on November 1, 1994,[4] will not be considered by the court.

In addition, the court's analysis of plaintiff's claims is the same under Title VII and the MHRA. *Sigurdson v. Isanti County*, 386 N.W.2d 715, 719 (Minn.1986) (interpreting legal analysis for MHRA as equivalent to Title VII). *See also Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570, 574 (8th Cir.1997) (applying principles of Title VII to cases under MHRA "because of the substantial similarities between the two statutes"); *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 444 (Minn.1983) (analyzing MHRA retaliation claim under *McDonnell Douglass* framework). The court's disposition of plaintiff's Title VII claims is therefore equally applicable to her MHRA claims.

#### a. racial discrimination

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2 (a)(1). The order and

---

**3.** It is unclear from plaintiff's "unilateral stipulation" whether in dismissing any claims against Maxson pertaining to Title VII plaintiff is also dismissing the MHRA claims against Maxson not related to aiding and abetting. Even if plaintiff has not dismissed her MHRA claims against Maxson, Maxson is entitled to summary judgment on these claims for the same reasons as Advance Circuits.

**4.** Four EEOC charges appear in the record. A charge dated November 1, 1994, alleges race and sex discrimination and retaliation through that date. A charge dated March 22, 1995, charges race and sex discrimination and retaliation through December 1, 1994. A charge dated the 22nd day of an unidentified month of 1995 charges race and sex discrimination through December 22, 1994. Finally, a charge dated April 15, 1996, charges race discrimination and retaliation through April 8, 1996.

allocation of proof in this case are governed by well-settled precedent. *See St. Mary's Honor Center. v. Hicks,* 509 U.S. 502, 507–512, 113 S.Ct. 2742, 2747–2750, 125 L.Ed.2d 407 (1993); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–06, 93 S.Ct. 1817, 1823–1826, 36 L.Ed.2d 668 (1973). As recently articulated by the Eighth Circuit:

> At the first stage, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. The prima facie case, in the absence of an explanation from the employer, creates a presumption that the employer unlawfully discriminated against the employee. If the plaintiff establishes a prima facie case, the burden of production shifts at the second stage to the defendant, who must articulate some legitimate, nondiscriminatory reason for the adverse employment action. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted and drops from the case. The burden then shifts back at the third and final stage to the plaintiff, who is given the opportunity to show that the employer's proffered reason was merely a pretext for discrimination. The plaintiff retains at all times the ultimate burden of persuading the trier of fact that the adverse employment action was motivated by intentional discrimination.

*Jetton v. McDonnell Douglas Corp.,* 121 F.3d 423, 425 n. 2 (8th Cir.1997) (citing *Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328, 1332 (8th Cir.1996)). Plaintiff's prima facie case requires proof of four elements: (1) plaintiff is a member of a protected class; (2) plaintiff is qualified for her position; (3) adverse employment action was taken against plaintiff; and (4) such action occurred in circumstances giving rise to an inference of discriminatory motivation. *Thomas v. Runyon,* 108 F.3d 957, 959 (8th Cir.1997) (citing *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir.1995)).

 Plaintiff proffers a number of alleged discriminatory actions on the part of Advance Circuits in support of her claim. She claims that racial animus led to her not being appointed as a group leader in 1995, her suspension for three days after an argument with a co–worker, the presence of a Union representative when told of her shift change, the requirement that she let her supervisor know ahead of time when she needs a schedule change, her not being able to switch shifts on one occasion, and the requirement that she bring in a doctor's slip to receive holiday pay. Plaintiff has failed to satisfy her prima facie case as to any of these claims. She cannot show that she was qualified to be a group leader, as her poor attendance record precluded her appointment. The suspension following the altercation with a co–worker does not give rise to an inference of discriminatory motivation, as there is no evidence that white workers involved in similar altercations were treated differently. As to the final four allegations, none constitute adverse employment action.

 Even if plaintiff could satisfy her initial burden, defendant has offered a non–discriminatory rationale for each action.[5] The burden thus shifts back to plaintiff to show that these non–discriminatory rationales are merely a pretext for discrimination. Plaintiff, however, has failed to address the motions for summary judgment on her racial discrimination claim, and has not pointed to a single piece of evidence in the record to

---

5. Good attendance is required to be a group leader, and plaintiff's record includes 46 tardies. *See* Affidavit of Mike Maxson (Docket No. 33) at ¶ 8; Affidavit of Richard Rodgers (Docket No. 37), Exhibit 3. The suspension was appropriate because plaintiff violated the company's Offensive Behavior Policy. *See* Affidavit of Richard Rodgers (Docket No.37), Exhibit 2. A Union representative was asked to be present at the meeting because Moody wanted to avoid a confrontation with plaintiff. Affidavit of Keith Moody (Docket No.35) at ¶ 4. Plaintiff was required to inform her supervisor in advance of necessary shift changes due to her attendance problems. *See* Affidavit of Mary Knoblauch (Docket No. 34), Exhibits 9–20. Her request for a shift change was denied because of Advance Circuits' workload and because plaintiff already had two switches, the maximum granted. Affidavit of Russ Praught (Docket No. 36) at ¶ 3. Medical documentation was required to receive holiday pay pursuant to the Collective Bargaining Agreement between the Union and Advance Circuits. Affidavit of Richard Rodgers (Docket No. 37), Exhibit 1.

support her charge. These claims against these defendants therefore fail as a matter of law.

### b. racial harassment

Plaintiff claims she has been subject to racial harassment during her employment at Advance Circuits. Title VII of the Civil Rights Act of 1964 prohibits an employer from engaging in racial harassment that creates a hostile or offensive working environment. *Patterson*, 491 U.S. at 180, 109 S.Ct. at 2374; *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). As the Supreme Court noted in *Meritor*, "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor*, 477 U.S. at 65, 106 S.Ct. at 2405 (citing *Rogers v. EEOC*, 454 F.2d 234 (5th Cir.1971), *cert. denied*, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972)).

A racially hostile work environment exists when an employer "creat[es] or condon[es] an environment at the work place which significantly and adversely affects the psychological well-being of an employee because of his or her race." *Gilbert v. City of Little Rock, Ark.*, 722 F.2d 1390, 1394 (8th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984) (citing *Walker v, Ford Motor Co.*, 684 F.2d 1355, 1358 (11th Cir.1982)). To meet her burden in establishing a prima facie case, plaintiff must establish "more than a few isolated incidents of harassment." *Gilbert*, 722 F.2d at 1394; *see also Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir.1981) (finding that plaintiff failed to establish his prima facie case because there was no "steady barrage of opprobrious racial comment."). A hostile environment must be determined from the totality of the circumstances. *Gilbert*, 722 F.2d at 1394.

A careful review of the record reveals the following incidents which could possibly be conceived as related to a racial harassment claim: (1) Moody yelled at plaintiff when she reported to work early one morning; (2) Maxson raised his voice at plaintiff during a departmental meeting; (3) Maxson allegedly showed plaintiff a picture of a black woman married to one of his relatives; (4) Maxson allegedly said to plaintiff "Not bad for a white guy" after dancing at a company event; and (5) A co-worker named Holmes greeted plaintiff with the words "Yo, mama." Even assuming that each of these occurrences was motivated by racial animus, they constitute nothing more than a few isolated incidents and are not a "steady barrage of opprobrious racial comment" as required by our caselaw. Viewing the totality of the circumstances surrounding these incidents, the court finds that no racially hostile work environment exists at Advance Circuits.

The court notes that plaintiff has again failed to address the Union's motion for summary judgment on her racial harassment claim. Any alleged harassment related to the Union is charged against Larson, the former Union President. Plaintiff, however, has dismissed Larson from this suit. Summary judgment is therefore granted as to the Union as well.

### 2. Aiding and Abetting

Plaintiff claims that Maxson aided and abetted unlawful harassment and discrimination against her based on her race. Complaint (Docket No. 1) at ¶ 42. Plaintiff bases her claim on Minn.Stat. § 363.03, subdivision 6, which provides that "it is an unfair discriminatory practice for any person ... intentionally to aid, abet, incite, compel or coerce a person to engage in any of the practices forbidden by [the Minnesota Human Rights Act]."

As an initial matter, the court notes that a one year statute of limitations applies to this claim. *See* Minn.Stat. § 363.06, subdivision 3 ("A claim of an unfair discriminatory practice must be brought as a civil action ... within one year after the occurrence of the practice."); *State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 699–700 (Minn.1996) (holding that Minn.Stat. § 363.06, subdivision 3, provides a one–year statute of limitations for filing a charge with the Commissioner, and that this period begins to run at the time of the discriminatory practice). As a result, plaintiff's claim is barred with respect to any events allegedly occurring before May 7,

1995, one year before the filing of the complaint.

As defendants Advance Circuits and Maxson point out, plaintiff has failed to articulate any specific allegations in support of an aiding and abetting claim against Maxson, instead making only a general assertion that Larson was "in cahoots" with Maxson to discriminate against plaintiff.[6] *See* Pl.'s Mem. in Opp'n to Summ. J. Mot. of all Def.'s (Docket No. 39) at 19. As the court has already discussed, to avoid summary judgment plaintiff cannot rest upon mere denials or allegations. Because the plaintiff has failed to set forth any specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial, summary judgment on this claim is appropriate. *See Helfter v. United Parcel Service, Inc.*, 115 F.3d 613, 616 (8th Cir.1997) (holding that employee's conclusory summary judgment affidavit and deposition testimony were insufficient to withstand a properly–supported motion for summary judgment).

In addition, any facts that might form the basis for plaintiff's aiding and abetting claim are without merit because plaintiff has failed to establish a prima facie case of sex discrimination. Because there is no actionable discrimination to aid or abet, summary judgment is appropriate. *See Zelewski v. American Federal Sav. Bank*, 811 F.Supp. 456, 464 (D.Minn.1993).

**3. Sexual Harassment**

Plaintiff claims that Maxson engaged in conduct constituting hostile environment sexual harassment in violation of Title VII and the MHRA and that Advance Circuits is liable under the doctrine of respondeat superior for Maxson's actions. The complaint alleges harassment only on the part of Maxson, and the court will limit its analysis to his behavior and the company's ensuing response.

To establish a prima facie case of sex discrimination in a hostile environment sexual harassment case under Title VII or the MHRA, a plaintiff must show that: (1) the plaintiff belongs to a protected class; (2) the plaintiff was subject to unwelcome sexual harassment; (3) the harassment was based upon sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1377 (8th Cir.1996); *Kopp v. Samaritan Health System, Inc.*, 13 F.3d 264, 269 (8th Cir.1993).

Sexual harassment by a co-employee does not violate Title VII unless the employer "knew or should have known of the harassment and failed to take proper remedial action." *Barrett v. Omaha Nat. Bank*, 726 F.2d 424, 427 (8th Cir.1984) (citing *Katz v. Dole*, 709 F.2d 251, 255 (4th Cir.1983)). Proper remedial action varies from case to case. The employer must, however, do more than indicate the existence of an official policy against harassment or request a harasser to refrain from discriminatory conduct. *Davis v. Tri–State Mack Distributors, Inc.*, 981 F.2d 340, 343 (8th Cir.1992); *Katz*, 709 F.2d at 255. Such corrective action does not require that the employer terminate an alleged harasser. To escape liability the employer must take "prompt remedial action reasonably calculated to end the harassment." *Davis*, 981 F.2d at 343. In determining if an employer has been put on notice of illegal harassment and has responded appropriately, the content of a plaintiff's complaints to the employer is relevant. *See Meritor*, 477 U.S. at 69–73, 106 S.Ct. at 2406–2408; *Noble v. Monsanto Co.*, 973 F.Supp. 849, 858 (S.D.Iowa 1997).

Plaintiff bases her sexual harassment charge on the following incidents: (1) Maxson would go out of his way to talk to plaintiff knowing that she did not wish to interact with him on a social level; (2) Maxson would sit with plaintiff in the lunchroom, when she had already made it known that she did not wish to have contract with him; (3) Maxson would look at plaintiff's breasts when he spoke to her; and (4) when Maxson intro-

---

6. As has already been mentioned, plaintiff has dismissed defendant Larson from this lawsuit. Since Maxson is alleged to have aided and abetted Larson's discriminatory conduct, the court questions whether any aiding and abetting claim against Maxson can stand. In light of the other reasons this claim fails, however, the court need not reach this question.

duced plaintiff to his wife he referred to her as his best worker. Pl.'s Mem. in Opp'n to Summ. J. Mot. of all Def.'s (Docket No. 39) at 8.[7] At her deposition, plaintiff testified that she did not complain to anyone in management about sexual harassment until she met with Rodgers on or about November 17, 1994. Deposition of Coffy Moss at 186–87. The evidence shows that Rodgers investigated the allegations and issued an advisory letter to Maxson. *See* Exhibit 24 to Affidavit of Mary Knoblauch (Docket No. 34). In that letter, Maxson was advised by Rodgers "to make a conscious attempt to maintain eye contact in the future when speaking with Coffy Moss" and to "confine your dealings and conversation with Coffy Moss to strictly business related topics." *Id.* Moss testified that any alleged harassment ceased thereafter. Deposition of Coffy Moss at 218.

██ In opposition to defendants' summary judgment motions, plaintiff proffers an affidavit dated July 18, 1997. In that affidavit, plaintiff avers that Maxson sexually harassed her throughout the years 1993, 1994, and 1995 and that plaintiff complained repeatedly to upper management about such conduct during that period. If the court were to consider this affidavit, questions of fact might exist precluding summary judgment. This affidavit, however, standing alone, is insufficient to withstand a properly supported summary judgment motion. *Helfter v. United Parcel Service, Inc.*, 115 F.3d 613, 616 (8th Cir.1997); *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir.1988) (holding that while conflicts in the evidence are normally matters for a jury to sort through, summary judgment is still appropriate where a party's sudden revision of testimony creates an issue of fact, as otherwise previous depositions could always be supplanted by new affidavits to avoid summary judgment). The court therefore finds that as a matter of law Advance Circuits took

prompt remedial action when apprised of plaintiff's sexual harassment claim and summary judgment is therefore granted on this claim.[8]

### 4. Reprisal and Retaliation

Plaintiff claims that all four defendants engaged in reprisal and retaliation against her for asserting her rights under Title VII and the MHRA. *See* Complaint (Docket No. 1) at ¶ 44. Plaintiff claims that Maxson retaliated against her by making a false statement that attributed the DCIS search to plaintiff's actions. She claims that Advance Circuits retaliated against her by denying her a group leader position and suspending her after an altercation with another coworker. Plaintiff also claims the Union failed to take proper action in connection with plaintiff's grievances. Plaintiff's retaliation claims against Larson are moot in light of her dismissal from this suit.

To establish a prima facie case of discriminatory retaliation, plaintiff must establish that: (1) she filed a charge of unlawful discrimination; (2) one of the defendants took an adverse employment action against her; and (3) the adverse action was linked to the filing of the charge of unlawful discrimination. *Evans v. T.W. Services, Inc. of Delaware*, 930 F.2d 612, 614 (8th Cir.1991); *Martin v. Local 1513 and Dist. 118 of the Intern. Ass'n of Machinists and Aerospace Workers*, 859 F.2d 581, 585 (8th Cir.1988). In considering retaliatory discharge claims, the court uses the three-stage order of proof and presumptions governing discrimination cases in general. *Jackson v. Delta Special School Dist. No. 2*, 86 F.3d 1489, 1494 (8th Cir.1996) (citing *Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir.1993)). The court has already discussed the applicable standards in its discussion of plaintiff's racial

---

7. Plaintiff also bases her hostile environment sexual harassment claim on (1) Maxson showing her pictures of a black woman married to a relative of his when he did not show the pictures to white female employees; and (2) Maxson approaching plaintiff after dancing at a company event and said "Not bad for a white guy." Pl.'s Mem. in Opp'n to Summ. J. Mot. of all Def.'s (Docket No. 39) at 8. These claims are clearly irrelevant to a claim of sexual, rather than racial, harassment.

8. Given the court's disposition of this claim, the court need not consider whether plaintiff's allegations rise to the level of a sexually hostile work environment. The court does note, however, that not all conduct that someone considers to be offensive rises to the level of sexual harassment and that plaintiff's allegations in this case are marginal at best.

discrimination claim, and will not repeat itself here.

 Here, plaintiff has satisfied the first element of her prima facie case, that she filed a charge of unlawful discrimination. Her claims against all the defendants fail, however, because she has failed either to show that the action complained of was an adverse employment action or that the action was linked to her charge of unlawful discrimination. "Although 'actions short of termination may constitute adverse action' ... 'not everything that makes an employee unhappy is an actionable adverse action.'" *Montandon v. Farmland Industries, Inc.*, 116 F.3d 355, 359 (8th Cir.1997) (citations omitted). As to Maxson, any alleged statement made after the DCIS search can not be considered adverse employment action. Maxson's alleged statement did not result in any change in plaintiff's position, title, salary, or any other aspect of her employment. Even if plaintiff's claim that other workers ostracized her as a result of Maxson's statement is true, such behavior standing alone does not give rise to liability on the part of Maxson individually or Advance Circuits under the doctrine of respondeat superior.

 As for the claims against Advance Circuits, plaintiff has failed to show any causal connection between her having filed claims of discrimination with the EEOC and her not being made a group leader and being suspended for fighting. Plaintiff has pointed to no evidence, other than her own bare allegations, that supports such a connection. As plaintiff herself says, "[t]o establish the third element of the test, the evidence, circumstantial or direct, must support a finding that retaliatory motive [sic] animated the adverse employment action." Pl.'s Mem. in Opp'n to Def.s' Summ. J. Mot. (Docket No. 39) at 14. Quite simply, plaintiff has proffered no such evidence. In addition, even if plaintiff had met her prima facie case, Advance Circuits has proffered legitimate, non-discriminatory reasons for its actions. As previously discussed, plaintiff's attendance problems precluded her being considered for a group leader position, and Advance Circuit's policy against fighting served as the basis for her suspension. While plaintiff may not like these actions by Advance Circuits, she has failed to carry her burden in showing any

illegality. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir.1995) ("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.").

Finally, plaintiff has failed to satisfy her burden as to the Union. It is clear that plaintiff is dissatisfied with the Union's handling of her various allegations of discrimination against Advance Circuits and the Union's failure to pursue several of her claims through arbitration. The evidence is overwhelming, however, that the Union fulfilled its obligation to plaintiff and pursued all relief to which plaintiff was entitled. It is also clear that the gravamen of plaintiff's complaints against the Union concern the actions of Larson; however, her dismissal precludes liability against her individually. Therefore, the court grants summary judgment in favor of defendants on this claim.

## 5. Defamation

Plaintiff claims defendant Maxson committed defamation per se when he

communicated false and defamatory statements to third parties, which were made without privilege and communicated to individuals without a need to know.... Such statements were not based upon opinion and such defamatory and false statements communicated by [d]efendant Maxson resulted in [p]laintiff being ostracized by management and co–workers, physical battery or abuse by a co–worker stepping on her foot intentionally, and harassment and humiliation by management and co–workers.

Complaint (Docket No. 1) at ¶ 23. The alleged defamatory statement concerned the reason for the DCIS search conducted at Advance Circuits' Minnetonka facility on June 28, 1995. According to Randy Johnson, plaintiff's co–worker who allegedly overheard the statement, Maxson told Deb Castro, supervisor of Advance Circuits' photo department, that the reason for the search was that "Coffy Moss has filed papers saying Ad-

vanced Circuits has falsified government documents." Affidavit of Randy Peter Johnson (contained in affidavit of Kenneth Udoibok) (Docket No.40) at ¶ 2. As a result of this statement, plaintiff claims she has been ostracized and physically abused by co–workers. Affidavit of Coffy Moss (contained in affidavit of Kenneth Udoibok) (Docket No. 40) at ¶ 5. She alleges a co–worker by the name of "Vish" intentionally stepped on her foot, and that other co–workers now keep their distance when previously they had socialized with plaintiff. *Id.* Plaintiff also alleges she was excluded from meetings held with employees regarding the progress of the investigation of Advance Circuits. *Id.* Maxson contends that he did not tell any employee that plaintiff reported Advance Circuits to the DCIS or was in any way responsible for the DCIS investigation. Affidavit of Mike Maxson (Docket No. 33) at ¶ 10.

■ In Minnesota, an actionable claim for defamation requires a plaintiff to prove that a statement was false, that it was communicated to someone besides the plaintiff, and that the statement tended to harm the plaintiff's reputation and lower plaintiff in the estimation of the community. *Richie v. Paramount Pictures Corp.,* 544 N.W.2d 21, 25 (Minn.1996) (quoting *Rouse v. Dunkley & Bennett, P.A.,* 520 N.W.2d 406, 410 (Minn. 1994)); *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 255 (Minn.1980) (citing the Second Restatement of Torts and Prosser on Torts). Slanders affecting a plaintiff in her business, trade, profession, office, or calling are classified as slanders per se and are actionable without proof of actual damages. *Stuempges,* 297 N.W.2d at 255 (citing *Anderson v. Kammeier,* 262 N.W.2d 366, 372 (Minn.1977)); *Scott Fetzer Co. v. Williamson,* 101 F.3d 549, 555 (8th Cir.1996) ("In Minnesota, defamatory statements about a person's business reputation constitute defamation per se and give rise to a presumption of general damages."). In such cases, harm to reputation is presumed. *Richie,* 544 N.W.2d at 25.

■ To constitute slander per se on the basis that a statement affects a person's conduct of business, trade, or profession, the words must be particularly harmful to plaintiff in her business, and general disparagement is not enough. *Anderson,* 262 N.W.2d at 372. Whether a statement constitutes slander per se depends both on the occupation of the plaintiff and the particular statement. *Id.* "[T]he remarks must relate to the person in his professional capacity and not merely as an individual without regard to his profession." *Id.*

■ In this case, there is no evidence that Maxson's alleged statement relates in any way to the performance of plaintiff's trade. Plaintiff is an hourly production employee. The fact that Maxson may or may not have said that plaintiff was responsible for the DCIS search has no effect on her ability to continue in this position. This is not analogous to the situation where it is said that a businessperson cannot be trusted or that a doctor is incompetent. There is thus no basis for labeling Maxson's alleged statements as slander per se, the court will not presume damages to plaintiff's reputation, and plaintiff will have to show actual harm.

Plaintiff expends considerable effort in her brief arguing that Maxson had no privilege to make his alleged defamatory statement. The court notes that Maxson has never asserted that such a privilege exists, and plaintiff's argument on this point is irrelevant.

■ Even though the complaint labels plaintiff's claim as slander per se and the court finds summary judgment appropriate on that claim, as pleaded the complaint can also be construed to set forth a claim of slander, with the aforementioned allegations of harm. Plaintiff claims that Maxson made his alleged slanderous statement to four employees, but she provides an affidavit of only one, Randy Peter Johnson. It is notable that nowhere in the record is there any evidence that Mr. Johnson, or the other three people allegedly present at the time the statement was made, treated plaintiff any differently as a result of the statement. However, Mr. Johnson's affidavit does say that "[s]ince the incident, I have observed that Coffy Moss is being treated poorly by her fellow employees. Employees are not cordial and are stand-offish." Affidavit of Randy Peter Johnson at ¶ 4. This averment provides a scintilla of evidence of harm, and makes summary judgment inappropriate on this claim.

However, in light of the court's granting of summary judgment on all of plaintiff's federal claims, there is no basis for this court's jurisdiction over this remaining state law claim. The general rule is that pendent claims should be dismissed without prejudice if federal claims are dismissed before trial. *Clayton v. Blachowske Truck Lines, Inc.*, 640 F.Supp. 172, 174 (D.Minn. 1986) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). In this case, factors mitigating in favor of dismissal include the fact that the court has not yet invested a great deal of time in resolving this claim and discovery already conducted by the parties can be used in any subsequent state proceedings. Plaintiff's claim is therefore dismissed without prejudice for lack of jurisdiction.

### 6. Negligent Supervision and Negligent Retention

Plaintiff alleges that Advance Circuits negligently supervised Maxson after becoming aware that he was sexually harassing her, allowed him to continue as her supervisor, and allowed him to continue contacting her "in a sexually harassing and stalking manner." Complaint (Docket No. 1) at ¶ 50. Plaintiff also claims that Advance Circuits negligently retained Maxson after becoming aware of the alleged racial and sexual harassment perpetrated on her by Maxson. Because the analysis required for disposing of these claims is identical, the court will consider them simultaneously.

The Minnesota Human Rights Act contains an exclusivity provision providing that "as to acts declared unfair [as discriminatory practices under § 363.03], the procedure herein provided shall, while pending, be exclusive." Minn.Stat. § 363.11. Defendant Advance Circuits argues that plaintiff's negligent supervision and retention claims are barred because any duty Advance Circuits owed plaintiff arises under the MHRA and the MHRA's exclusivity provision therefore precludes separate common law negligence actions.

The Minnesota Supreme Court has held that a plaintiff may simultaneously pursue claims under the MHRA and common law negligence that arise from the same underlying facts. *Vaughn v. Northwest Airlines, Inc.*, 558 N.W.2d 736, 744–45 (Minn. 1997) (finding no preemption where separate duties owed under MHRA and common law negligence); *see also Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 379 (Minn.1990) (holding that a sexual harassment action brought pursuant to MHRA does not bar a parallel action for common law battery). However, a plaintiff's negligence claims must be founded on a duty of care independent from duties owed under the MHRA. In *Vaughn*, the defendant owed separate duties under the MHRA, based on plaintiff's disability, and common law negligence, based on the failure of airline employees to assist plaintiff with her baggage. *Vaughn*, 558 N.W.2d at 744–45.

In this case, there is no doubt plaintiff's negligence claims arise from the same duty as her harassment claim under the MHRA. Plaintiff's negligence claims are based entirely on Advance Circuit's actions after being made aware of Maxson's alleged discriminatory conduct.[9] Unlike *Vaughn* and *Wirig*, therefore, there is no distinction in duties owed between the MHRA and common law claims. Since plaintiff has not identified any duty owed her separate from the duty created by the MHRA, the negligence claims are preempted and summary judgment on these claims is granted.

Because the court finds that plaintiff's negligence claims are preempted, an analysis of whether these claims are also barred if plaintiff suffered no physical injury is not necessary.

### 7. Failure to Represent

Plaintiff alleges that the Union failed to fairly represent her "pursuant to the Union contract." Complaint (Docket No. 1) at ¶ 52. According to plaintiff, the Union failed to pursue grievances on her behalf regarding sexual harassment claims against Maxson

---

9. In addition, because plaintiff has failed to sustain a prima facie case of harassment, there is no basis for holding Advance Circuits liable under either a negligent supervision or negligent retention claim.

and plaintiff's not being selected for a group leader position. *See* Pl.'s Mem. in Opp'n to Summ. J. Mot. of all Def.'s (Docket No. 39) at 27.

█ Plaintiff's claims fail as a matter of law, as such claims are time-barred. A suit by an employee alleging a violation of a union's duty of fair representation is subject to a six month limitation. *Sixel v. Transportation Communications,* 708 F.Supp. 240, 243 (D.Minn.1989). *See* 29 U.S.C. § 160(b) ("[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board."); *DelCostello v. International Broth. of Teamsters,* 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983) (applying § 10(b) statute of limitations period in "hybrid suits" where employee asserts, in tandem with a claim against an employer, a claim against a union for breach of the duty of fair representation).

All of the union activities complained of by plaintiff occurred, by plaintiff's own admission, no later than December of 1994. By that date plaintiff knew that the Union planned no further action on her behalf. *See* Deposition of Coffy Moss at 524; Affidavit of Thomas Hoffman (Docket No. 28) at ¶ 8. Plaintiff's complaint was filed in May of 1996, nearly seventeen months later. As this is clearly beyond the six–month limitation period, plaintiff's fair representation claim is barred.

█ Plaintiff argues that because Title VII claims filed within 90 days after receiving a dismissal of charge or right to sue letter from the EEOC and claims filed pursuant to the MHRA within 45 days after the Minnesota Department of Human Rights dismisses a charge are not time–barred, neither is her fair representation claim. This argument, however, confuses plaintiff's fair representation and discrimination claims. Simply because the claims the Union failed to pursue involved alleged discrimination or harassment, plaintiff cannot bootstrap her fair representation claim onto the Title VII or MHRA statute of limitations. The fair representation claim must stand or fall on its own, especially in this case where plaintiff has asserted separate claims against the Union for racial discrimination and harassment.

While the evidence reflects that plaintiff filed suit within 90 days of receiving a right to sue letter from the EEOC, this is not relevant when considering a fair representation claim.

**B. Defendants Advance Circuits and Mike Maxon's Motion to Strike**

█ Defendants Advance Circuits and Mike Maxson move to strike exhibits J and K of the affidavit of Kenneth Udoibok (Docket No. 40). Exhibit J is a letter from Jesse Gant, plaintiff's counsel, to Terence Fruth, counsel for Advance Circuits and Mike Maxon. In that letter Mr. Gant makes an explicit settlement demand. Exhibit K is Mr. Fruth's response. Defendants request that these letters be removed from the public record pursuant to Rule 408 of the Federal Rules of Evidence. Fed.R.Evid. 408 provides in relevant part:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

The rationale behind Rule 408 is promotion of the public policy favoring compromise and settlement of disputes. *See Fed.R.Evid. 408 Advisory Committee Notes.*

█ As defendant points out, in her opposition to defendants' summary judgment motions plaintiff refers to these letters in support of her argument that Advance Circuits illegally retaliated against her because of her counsel's settlement demand. Plaintiff is therefore seeking to use evidence of settlement discussions in proving liability. This is explicitly prohibited by Rule 408. Plaintiff argues that because the defendant opened the door to settlement discussions, defendant's motion to strike should be denied. The application of Rule 408, however, does not depend upon who "opened the door" to settlement discussions, and plaintiff's argument is therefore entirely without merit.

**CONCLUSION**

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Pursuant to the stipulation of plaintiff, defendant Wendy Larson is dismissed as a defendant in this case;

2. Summary judgment is granted in favor of defendants on plaintiff's claims for racial discrimination and harassment, aiding and abetting, sexual harassment, reprisal and retaliation, slander per se, negligent supervision and retention, and failure to represent;

3. Plaintiff's remaining claim for slander is dismissed without prejudice for lack of jurisdiction;

4. Defendants Advance Circuits' and Mike Maxon's motion to strike Exhibits J and K of the affidavit of Kenneth Udoibok (Docket No. 40) is granted. All copies of these documents shall be removed from the public record.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**